The STATE of Ohio, Appellee,

v.

KRUEGER, Appellant.

[Cite as *State v. Krueger*, 176 Ohio App.3d 95, 2008-Ohio-1566.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–06–072.

Decided March 31, 2008.

Kevin J. Baxter, Erie County Prosecuting Attorney, and Mary Ann Barylski, Assistant Prosecuting Attorney, for appellee.

Linda Fritz–Gasteier, for appellant.

---

HANDWORK, Judge.

{¶ 1} Appellant, Kellan Krueger, appeals his convictions on four counts of theft, all violations of R.C. 2913.02(A)(1), all felonies of the fourth degree; one count of theft, a violation of R.C. 2913.02(A)(1), a felony of the third degree; one count of complicity to theft, a violation of R.C. 2913.02(A)(3) and 2923.03(A)(2), a felony of the second degree; and one count of complicity to secure writings by deception, a violation of R.C. 2913.42 and 2923.03(A)(2), a felony of the second degree. Appellant asserts that the following errors occurred in the proceedings below:

{¶ 2} "I. The trial court erred in its ruling that the burden lies with the proponent of the witness to establish that the witness exhibits indicia of competency and that said ruling was an abuse of discretion.

{¶ 3} "II. The trial court erred in its ruling that a witness was not competent to testify under Evidence Rule 601 and said ruling was an abuse of discretion.

{¶ 4} "III. The trial court erred in allowing evidence of prior bad acts to be admitted under Evidence Rule 404(B) when the court's jury instructions failed to limit their use to 'other valid purposes.'

{¶ 5} "IV. Defense counsel was ineffective in that she did not offer any arguments or case law to the trial court with regard to the issue of burden of proof in a competency; she did not call an independent expert to testify as to whether the witness' [sic] medical condition effected [sic] her ability to testify competently; and she did not move for a continuance when a potential expert witness was unavailable for trial."

{¶ 6} The facts necessary to a disposition of appellant's assignments of error are as follows.

{¶ 7} The alleged victim in this cause is Mary Jeri Bressler, who had a stroke on September 22, 1997, shortly before her 72nd birthday. The stroke affected that portion of Mary's brain that controls the use of her right arm and right leg. It also affected that part of the brain that controls the ability of a person to express his or her thoughts. This condition is called expressive aphasia, which causes severe difficulty in speaking clearly. A person who has this condition can say yes and no, but commonly interchanges the two; that is, Mary will say yes when she means no, and vice versa. Nevertheless, Mary's physician, Karl Oberer, D.O., did not believe that Mary's cognitive function, i.e., her ability to

hear and understand what was being said to her, was affected. Mary also suffers from depression, thyroid disease, emphysema, and high cholesterol.

{¶ 8} After Mary's stroke, her husband, Roland Bressler, took care of her. In 2001 and 2002, Roland received telephone calls concerning debt accumulating on Mary's credit cards. By October 2002, the credit card debt had reached $22,000. Roland learned that appellant, who was then 14 years old, was with Mary (Mary is appellant's grandmother) when she reactivated[1] her credit cards in 2001; appellant made numerous purchases on the credit cards. As a result of a $3,000 purchase on Mary's Sears credit card, appellant was adjudicated a delinquent child for misuse of a credit card, a violation of R.C. 2913.21(A).

{¶ 9} In 2003, Roland filed a divorce action against Mary. The divorce was final in December of that year. Mary received approximately $125,000 in marital assets, which included investments (bonds) with Edward Jones. Appellant and Mary moved into an apartment together. Later, Mary and appellant rented a home from appellant's maternal grandmother, Elizabeth Holmes, and step-grandfather, Danny Holmes. Mary's only son, Cary Bressler, who is appellant's father, filed a motion to appoint a guardian for Mary in the Erie County Court of Common Plea, Probate Division. He was afraid that his mother would dissipate the funds necessary for her care by allowing appellant to spend her assets. The probate court ordered Michelle Smith, who was Roland's attorney, to hold Mary's divorce settlement during the guardianship proceedings.

{¶ 10} Adele Kozar, a licensed social worker employed by the Erie County Probate Court as an investigator, looked into Mary's case in order to determine whether she should recommend that a guardian be appointed for Mary. Kozar spoke with Mary, appellant, Cary, and Roland. At appellant's trial, Kozar testified that Mary's judgment was impaired by her stroke. According to Kozar, Mary "was not really able to answer questions appropriately and sometimes it seemed like she didn't even understand the questions." In her report and recommendation and an addendum to that report, Kozar noted that despite the fact that Mary knew that her settlement monies were not to be spent, she allowed appellant to take control of these funds. Kozar was of the opinion that Mary needed to be protected from her grandson and that "the damage caused by her stroke may have impaired her ability to comprehend the long-term financial ramifications of [appellant's] request for money and she is not able or willing to oppose anything he asks of her." Kozar recommended that a guardian be appointed over Mary's estate.

---

1. After her stroke in 1997, Mary accumulated approximately $38,000 in credit card debt, much of which was spent on appellant. Roland took out a home-equity loan to pay this debt, and canceled Mary's credit cards.

{¶ 11} On February 5, 2004, and despite the guardianship proceedings, Mary, accompanied by appellant, borrowed against her Edward Jones investment account. Funds in the amount of $80,000 were transferred to a joint bank account in the names of Mary and appellant and were secured by Mary's bonds. By May 3, 2004, when the probate court appointed Elizabeth Wilbur as the independent guardian over the estate of Mary Bressler, there was approximately $16,000 in the account. After her appointment, Wilbur sold the bonds and paid the loan made by Edward Jones. Mary's personal estate, as calculated by the guardian on May 24, 2004, was worth $23,829, plus $22,000 a year from her pension and Social Security payments.

{¶ 12} In his testimony at trial, appellant asserted that he was the sole caretaker of Mary, including bathing her, doing most of the cooking, performing the household chores, paying the bills, and driving his grandmother anywhere she needed to go. Appellant claimed that with Mary's approval he purchased household goods, made a large payment to his maternal grandparents (ostensibly for the first two months' rent, home insurance, and an appraisal of the house that he and Mary were renting), bought a 2002 Impala, had the Impala repaired, and traded in the Impala at a Ford dealership and purchased a Ford Explorer.

{¶ 13} Appellant was aware of the guardianship proceedings in the probate court, and, admittedly, transferred thousands of dollars from the joint account either into his savings account or his checking account and took out money by means of money orders. He also sold Mary's First Energy stock to his maternal grandmother for $27,000. Appellant asserted that some of that money was used for a down payment on the house where he and Mary resided and that he used the remainder to pay off the amount owed on the Explorer. He acknowledged the fact that much of the shifting of the funds out of the joint account was to "hide" Mary's money from an appointed guardian. Appellant attributed this intent to hide the funds to Mary.

{¶ 14} Appellant wanted to have his grandmother testify in his defense. The prosecution, however, took the position that due to her expressive aphasia, Mary was incompetent to testify under Evid.R. 601(A). The trial court, therefore, held a competency hearing and, over defense counsel's objection, placed the burden of demonstrating that Mary was competent on appellant.

{¶ 15} At the hearing, Dr. Oberer reiterated that Mary has the ability to receive accurate impressions of fact and "probably" could recollect impressions of fact and observation. He further testified that Mary had the ability to know the difference between truth and falsehood, as well as the consequences of falsehoods, and is not "demented." The doctor stated that Mary does have difficulty in communicating her thoughts and, consequently, he could not be confident that he

was getting the "right answer" to a question. In fact, Dr. Oberer stated that Mary will often answer yes and no to the same question.

{¶ 16} The trial judge then had Mary take the stand. While under oath, Mary answered questions posed by defense counsel, the prosecution, and the trial court. Some of her answers were inconsistent or unintelligible. For example, when the trial court asked Mary whether she understood the consequences of lying, Mary said yes. When the defense attorney asked her the same question, Mary replied no. Mary did, nonetheless, provide adequate answers to some of the questions. For example, she said that she would be in trouble if she failed to tell the truth. Mary indicated through yes and no answers that there was no problem with her thinking, but she recognized that she had problems in properly expressing her thoughts.

{¶ 17} The report of a psychologist, John G. Stratton, Ph.D., was also entered into evidence. Dr. Stratton met with Mary upon the request of the Erie County Court of Common Pleas, Probate Division, for the purpose of determining whether Mary needed a guardian. The report states that Mary "is a fairly competent lady, although because of her speaking and writing difficulties, her ability to manage her finances effectively is limited." Dr. Stratton concluded that "at this time," Mary was able to "handle most aspects of her life and therefore any guardianship should be limited to financial help."

{¶ 18} On the day after the competency hearing, the court below entered a judgment finding that (1) Mary is capable of receiving just impressions of fact and transactions under Evid.R. 601(A), (2) due to damage to her brain resulting from her stroke, Mary is incapable of relating those just impressions of fact and transactions as required by Evid.R. 601(A), and, therefore, (3) Mary is incompetent pursuant to Evid.R. 601(A) to testify as a witness at appellant's trial.

{¶ 19} At the close of all evidence, the jury retired to deliberate and found appellant guilty on all counts. After sentencing, appellant filed his timely notice of appeal.

{¶ 20} Appellant's assignments of error Nos. I and II are interrelated and, therefore, shall be considered together. In assignment of error No. I, appellant contends that the trial court erred in placing the burden of proving that Mary was competent to testify on the defense because there was no evidence showing that Mary was of "unsound mind." Appellant's assignment of error No. II argues that the trial court abused its discretion in finding that Mary was incompetent to testify under Evid.R. 601(A).

{¶ 21} Generally, a trial court is given wide latitude in determining whether a prospective witness is competent to testify. *State v. Clark* (1994), 71 Ohio St.3d 466, 469, 644 N.E.2d 331. Thus, absent an abuse of discretion, the

trial court's judgment on this issue cannot be overturned. Id. An abuse of discretion connotes more than an error of law or judgment. The implication is that "the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Moreland* (1990), 50 Ohio St.3d 58, 61, 552 N.E.2d 894.

{¶ 22} Evid.R. 601(A) provides that "[e]very person is competent to be a witness except * * * [t]hose of unsound mind, and children under ten years of age, who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." If the witness is not of unsound mind and is over ten years of age, he or she is presumed to be competent to testify, i.e., is considered per se competent. *State v. Groves*, 7th Dist. No. 2002-Ohio-5245, 2002 WL 31170147, ¶ 14, citing *State v. Clark*, 71 Ohio St.3d at 469, 644 N.E.2d 331. As a result, the party challenging the competence of a witness has the burden of demonstrating that that witness is incompetent to testify. Id. Nevertheless, where the witness is of unsound mind or is under the age of ten, the proponent of that witness's testimony has the burden of establishing that "the witness is capable of receiving just impressions and relating them truthfully." *State v. Clark* at 469, 644 N.E.2d 331.

{¶ 23} The term "unsound mind" is defined in R.C. 1.02(C) and "includes all forms of mental retardation or derangement." Although not defined in the Ohio Revised Code, "derangement" is equated with insanity. *Fisher v. Ohio University* (1992), 63 Ohio St.3d 484, 488, 589 N.E.2d 13. "Insanity" is defined in Black's Law Dictionary (8th Ed.2004) 810, as "[a]ny mental disorder severe enough that it prevents a person from having legal capacity and excuses the person from criminal or civil responsibility. Insanity is a legal, not a medical, standard."

{¶ 24} As applied to the present case, Mary is not mentally retarded, nor does she have a mental disorder that is so severe that it prevents her from having legal capacity and excuses her from criminal or civil liability. Therefore, Mary is not "of unsound mind" within the meaning of Evid.R. 601(A). As a consequence, the trial court did err in placing the burden of demonstrating that Mary was incompetent to testify under Evid.R. 601(A) on the proponent of the witness. However, it was harmless error beyond a reasonable doubt, see Crim.R. 52(A), because ample evidence was offered to meet the standard for a finding of incompetency to testify under Evid.R. 601(A). In particular, the evidence offered at trial and the voir dire of Mary conducted by the trial judge established beyond a reasonable doubt that although Mary might be able to receive accurate impressions with respect to the issues in the case, specifically, the financial matters conducted by appellant, she was unable to accurately relate those impressions truthfully. Accordingly, the trial court did not abuse its discretion in

finding that Mary was incompetent to testify under Evid.R. 601(A), and appellant's assignments of error Nos. I and II are not well taken.

{¶ 25} In his assignment of error No. III, appellant maintains that the trial court erred in denying his motion in limine, which asked the trial court to preclude the admission of his juvenile record. At the age of 14, appellant was adjudicated a delinquent for the misuse of his grandmother's credit card. The trial court allowed the evidence of his delinquency adjudication pursuant to Evid.R. 404(B) and "on specific credibility issues," but not as a "general attack on appellant's credibility." Appellant insists that the cases cited by the trial court are either not relevant because they do not deal specifically with the admissibility of juvenile records or that the court's reliance on certain case law is misplaced.

{¶ 26} During the testimony of Adele Kozar, the probate court investigator, she mentioned appellant's previous misuse of his grandmother's credit card. Appellant objected because the witness was "getting into the juvenile case." After much discussion, the trial court allowed the following testimony from this witness, who read the following statement from her report:

{¶ 27} "In 2001 [sic] [appellant] then age 14 either talked his grandmother into getting more credit cards or obtained them himself without his grandmother's permission. By the time [Roland] figured out what was going on, the credit card debt was up to $22,000."

{¶ 28} The court then addressed the jury, informing the jurors that the mention of other "acts or wrongs" in the report could not be considered for "propensity," but could be considered for such purposes as "motive, opportunity, intent, plan, knowledge, identity, absence of mistake, or accident, things of that nature, but strictly not for propensity only." The court then went one step further and stated that "juvenile adjudications can come in if the specific reason is for a specific attack of the [appellant's] credibility under 404(B), other acts," but not for any "general attack" on appellant's credibility.

{¶ 29} Later in the trial, the state presented Faith Parker, administrator of the Erie County Court of Common Pleas, Domestic Relations and Juvenile Divisions, for the purpose of entering appellant's juvenile record into evidence. Appellant objected, arguing that the juvenile record could not be introduced into evidence unless and until appellant testified. The trial court disagreed and found that the record could be admitted pursuant to Evid.R. 404(B). Relying on the same cases that it had discussed during Kozar's testimony, the court stated that the juvenile record could be allowed "on specific credibility issues, not general on credibility, not general impeachment."

{¶ 30} Moreover, in his jury instructions the trial judge not only gave the jury the correct other-acts instruction, but also gave the following instruction, without any objection from appellant:

{¶ 31} "Juvenile Conviction, General Credibility: Evidence was received that the defendant was found delinquent of a criminal offense. That evidence was received only for a limited purpose. It was not received, and you may not consider it to prove the character of the defendant in order to show he acted in conformity with that character. If you find that the defendant was found delinquent of a criminal offense, you may consider that evidence only for the purpose of testing defendant's credibility and believability, and the weight to be given defendant's testimony. It cannot be considered for any other purpose."

{¶ 32} Evid.R. 404(B) provides: "Evidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See also *State v. Smith* (1990), 49 Ohio St.3d 137, 140, 551 N.E.2d 190. R.C. 2945.59 also permits the use of such evidence to show motive or intent, the absence of mistake or accident on a defendant's part, or "the defendant's scheme, plan, or system in doing the action in question." *State v. Broom* (1988), 40 Ohio St.3d 277, 282, 533 N.E.2d 682. Nevertheless, using other crimes, wrongs, or acts that were committed as a juvenile *solely* for the impeachment of a witness's credibility is not considered a proper purpose. R.C. 2151.358(H); Evid.R. 609(D); *State v. Lukens* (1990), 66 Ohio App.3d 794, 802–803, 586 N.E.2d 1099.[2] Nonetheless, where, for example, the offender or one of his witnesses testifies favorably about a certain matter in his life, the state may offer evidence, including a juvenile record, to contradict that testimony. *State v. Robinson* (1994), 98 Ohio App.3d 560, 568–569, 649 N.E.2d 18; *State v. Goodwin*, 7th Dist. No. 99–CA–220, 2001-Ohio-3416, 2001 WL 1740065.

{¶ 33} In the present case, appellant testified and claimed that every monetary transaction that he made was at the behest of his grandmother and

---

**2.** Evid.R. 609(D) provides that "[e]vidence of juvenile adjudications is not admissible except as provided by statute enacted by the General Assembly." R.C. 2151.358(H), the statute in question, reads:

"Evidence of a judgment rendered and the disposition of a child under that judgment is not admissible to impeach the credibility of the child in any action or proceeding. Otherwise, the disposition of a child under the judgment rendered or any evidence given in court is admissible as evidence for or against the child in any action or proceeding in any court in accordance with the Rules of Evidence and also may be considered by any court as to the matter of sentence or to the granting of probation."

that all of the monies that he spent were for her benefit. He also admitted that bank accounts were opened in his name only and that the numerous money orders shifting funds to different accounts or used for expenditures were done to hide Mary's funds from the guardian of her estate. Appellant attributed the desire to hide these funds to Mary. In short, appellant's defense was that he spent or hid his grandmother's assets only with her full knowledge and because she wanted him to do so. Although his juvenile record was not used during appellant's cross-examination, we find that it could be entered into evidence both as another act or wrong to show his intent to commit the charged offenses in this cause and to contradict appellant's direct testimony. For these reasons, appellant's assignment of error No. III is not well taken.

{¶ 34} Appellant's assignment of error No. IV contends that he received ineffective assistance of trial counsel because she failed to offer any arguments or present case law to the trial court relative to the burden of proof in a competency hearing. He also complains that his trial counsel was ineffective due to the fact that she failed to call an expert witness to testify on the question of Mary's competence to testify at trial and did not request a continuance when she discovered that Dr. Stratton was unavailable to testify at appellant's trial.

{¶ 35} In *Strickland v. Washington* (1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court devised a two-pronged test to determine ineffective assistance of counsel. In order to demonstrate ineffective assistance of counsel, an accused must satisfy both prongs. Id. First, he must show that his trial counsel's performance was so deficient that the attorney was not functioning as counsel guaranteed by the Sixth Amendment to the United States Constitution. Id. Second, he must establish that counsel's "deficient performance prejudiced the defense." Id. The failure to prove any one prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal* (2000), 87 Ohio St.3d 378, 389, 721 N.E.2d 52, citing *Strickland* at 697, 104 S.Ct. 2052 In Ohio, a properly licensed attorney is presumed competent. *State v. Lott* (1990), 51 Ohio St.3d 160, 174, 555 N.E.2d 293.

{¶ 36} In the present case, even if we were to conclude that trial counsel was deficient in her duty by failing to offer case law or arguments with regard to the burden of proof in determining Mary's competency to testify, we would not find that this omission prejudiced the defense. Specifically, we have already determined that although the trial court erred in placing the burden of proof as to competency on the defense, that error was harmless. Accordingly, the outcome on this issue would not have been different.

{¶ 37} On the question of defense counsel's failure to ask for a continuance so that Dr. Stratton or some other expert could testify, we also find that this omission did not prejudice the defense, because the outcome would not have been different. Dr. Stratton's report, which was favorable to Mary, was entered into evidence. Both Dr. Oberer and Mary herself testified at the hearing. Based upon this evidence, as well as the probate court investigator's testimony, the court could have, and did, find Mary incompetent to testify. Accordingly, appellant's assignment of error No. IV is not well taken.

{¶ 38} The judgment of the Erie County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.

Judgment affirmed.

SKOW and OSOWIK, JJ., concur.