[Cite as *State v. Milligan*, 2021-Ohio-1071.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
SANDUSKY COUNTY

State of Ohio                                          Court of Appeals No. S-20-004

     Appellee                                      Trial Court No. 19 CR 811

v.

Daymond E. Milligan                          **DECISION AND JUDGMENT**

     Appellant                                     Decided:  March 31, 2021

* * * * *

Beth A. Tischler, Sandusky County Prosecuting Attorney, and
Alexis M. Hotz, Assistant Prosecuting Attorney, for appellee.

Russell V. Leffler, for appellant.

* * * * *

**ZMUDA, P.J.**

## I.  Introduction

**{¶ 1}** This matter is before the court on appeal of the judgment of the Sandusky

County Court of Common Pleas, which, after a jury trial, sentenced appellant, Daymond

Milligan to life in prison without parole for each of two convictions for rape, to run

concurrently to each other and concurrent to five years in prison for the conviction for gross sexual imposition. Finding no error, we affirm.

{¶ 2} In May 2019, appellant's step-granddaughter, L.G., learned about safe and unsafe touch in her third-grade classroom as part of the Safety Awareness Prevention Program curriculum. The lesson, presented by the school counselor, explained the difference between safe and appropriate touching and unsafe and inappropriate touching. Immediately after the lesson, L.G. reported "unsafe" experiences at the hands of appellant to her teacher, Ms. Hogan. Hogan reported the conduct to Fremont Police and Sandusky County Children Services, and they investigated the allegations.

{¶ 3} Appellant was indicted on August 28, 2019, with five counts of rape in violation of R.C. 2907.02(A)(1)(b) and (B), felonies of the first degree, and five counts of gross sexual imposition in violation of R.C. 2907.05(A)(4) and (C)(2), felonies of the third degree. The incidences were alleged to have occurred in 2018 and 2019, when L.G. was younger than 10 years of age. By the time of trial, the prosecutor had dismissed two counts of rape and two counts of gross sexual imposition. Appellant had previously been convicted for the same type of conduct with L.G.'s mother, A.L., when she was around 11 or 12 years old. A.L. is appellant's step-daughter.

{¶ 4} The prosecution filed notice of intent to use evidence of this prior conduct under Evid.R. 404(B) on November 19, 2019, arguing appellant's conduct with L.G.'s mother demonstrated pattern, motive, or plan because the conduct toward each victim was nearly identical. Appellant, through trial counsel, filed a motion in limine to

2.

preclude admission of the prior conviction as "substantially outweighed by the danger of unfair prejudice." Counsel characterized the proposed evidence as bad character evidence, and objected, specifically, to evidence of conviction and imprisonment.

{¶ 5} The trial court addressed the matter in chambers, prior to the start of trial on January 9, 2020. The prosecution agreed to preclude questioning that might elicit the fact of appellant's prior conviction, as requested by appellant's trial counsel. The trial court determined that the prosecution could question L.G.'s mother regarding the prior conduct, with a limiting instruction provided by the court. The trial court also addressed appellant regarding his decision to reject the latest plea offer and proceed to trial. Appellant asked the trial court about whether he would be allowed to testify, and the trial court informed him of his right to testify, while cautioning appellant that testifying would potentially open him up to questioning on cross-examination he might otherwise avoid. Appellant's trial counsel recommending against testifying.

{¶ 6} The matter proceeded to trial before a jury on January 9 and 10, 2020. The prosecution presented testimony of L.G., her mother A.L., Ms. Hogan, and the investigators, Angela Wheeler from Children Services and Detective Jason Kiddey.

{¶ 7} L.G. testified that she often stayed the weekend at her grandmother's and appellant's home in the year before her baby sister was born, when she was in the third grade. L.G. testified that, while she was staying at appellant's home, he touched her privates and inserted his finger and tongue inside her vagina numerous times. She also testified that appellant took her hand and made her touch his penis one time.

3.

{¶ 8} According to L.G., appellant always checked to make sure her grandmother would not see him with L.G. and he threatened L.G. that telling would mean her grandmother "wouldn't have enough money to * * * stay in her house[.]" L.G. also indicated that appellant bought her things, like a toy, a bike, and a cell phone. She stated she did not tell her mother about the abuse because she did not want to be kept from seeing her grandmother.

{¶ 9} L.G.'s mother testified next. A.L. testified that her mother has been with appellant since she was 8 years old, and that he began mistreating her when she was about 11. A.L. described instances in which appellant came into her room and masturbated and touched her, and tried to "make out" with her. She testified that appellant "stuck his fingers" inside her vagina twice, when she was a child. There was no objection, by appellant's trial counsel, to any of this testimony.

{¶ 10} A.L. testified that, after she had children of her own and moved back to Ohio, she rekindled her relationship with her mother. Because appellant was still in her mother's life, A.L. stated she forgave him and "tried to move forward, tried to see the good." Appellant helped A.L. with some expenses in the beginning of the renewed relationship, and later, appellant and A.L.'s mom helped her with the kids, while she worked, by keeping them over the weekend. Weekend visits came to an end after L.G. told her teacher, Ms. Hogan, about the abuse.

{¶ 11} Ms. Hogan testified that she was L.G.'s third grade teacher for the 2018-2019 school year, and was present for the safe/unsafe touching presentation by the school

4.

counselor to her class in May. She summarized the content of the presentation as explaining to students "that adults should not be touching any areas covered by a bathing suit unless it is to keep those areas clean or healthy," with examples of safe touching described as a doctor needing to touch to examine or a parent needing to touch for bathing. Ms. Hogan testified that L.G. wanted to report information "that matched the presentation we were giving" indicating "that she was being touched in an unsafe way."

{¶ 12} As a result of L.G.'s disclosure, Ms. Hogan sought out the guidance counselor, and the two reported the matter to children services. L.G. remained in Ms. Hogan's class for the rest of the school year, and Ms. Hogan testified that L.G. appeared concerned and was "definitely emotional in the classroom, both with adults and other peers." L.G. also appeared "skittish" and concerned about what might happen as a result of her disclosure to her teacher, asking Ms. Hogan about the matter "frequently."

{¶ 13} Angela Wheeler, an investigator for Sandusky County Children Services testified next. She described her process, and indicators she looked for, such as consistencies in the child's telling of events and details, and the child's "behavioral state," directly observed by Wheeler and described by those in the child's life. Wheeler also looked for signs of grooming, which she described as ways in which abusers ingratiate themselves with the victim, to get close and win the child's trust or to manipulate the child.

{¶ 14} In L.G.'s case, Wheeler testified that the school initiated the case with a phone call on May 14, 2019, reporting suspected sexual abuse. As a result of the report,

5.

Wheeler opened an investigation and contacted the Fremont Police Department, and worked with Detective Kiddey in investigating the allegations. Wheeler testified that she and Detective Kiddey interviewed L.G. at the agency.

{¶ 15} Wheeler noted L.G.'s discomfort during the interview, including L.G.'s hesitancy around Detective Kiddey, an adult male. Using anatomical drawings, L.G. identified for Wheeler the places of the body she had been touched or had contact with appellant. In her testimony, Wheeler identified the drawing, completed with L.G.'s assistance during the interview, and noted the body parts circled by L.G. On the male drawing, L.G. circled the male privates, and on the female drawing, the female privates.[1] Wheeler also indicated that L.G. disclosed details of her interactions with appellant consistent with grooming, including the purchase of toys, a cell phone, and a bike, and mention of financial support for L.G.'s family, occurring after instances of abuse.

{¶ 16} Wheeler testified that she and Detective Kiddey also interviewed appellant regarding the allegations, and appellant disclosed his past history with A.L., L.G.'s mother, admitting to touching A.L. when A.L. was "a young teenager." Wheeler also alluded to time in "prison" in the following exchange with the prosecutor:

> Q: Okay. And did [appellant] tell you anything about his past with A.L.
>
> A: He did.

---

[1] The trial court admitted the drawing as an exhibit without objection.

6.

Q: And what did [appellant] tell you?

A: About his history with his stepdaughter.

Q: Correct.

A: He had stated on the night I met him on May 15th of 2019, he had stated when we were addressed – when I was addressing allegations and Det. Kiddey was addressing allegations with [appellant], [appellant] stated that he had been to prison previous –

Trial counsel interrupted the exchange by objecting, leading to a sidebar with the trial court, out of the jury's hearing.

{¶ 17} In that sidebar, appellant's trial counsel argued that a mistrial was required. The prosecutor, however, argued a limiting instruction was all that was necessary, based on the "spontaneous" utterance that was not anticipated based on the nature of the question to the witness. The trial court denied the motion for a mistrial, and after concluding the sidebar, provided a limiting instruction to the jury as follows:

The jury is instructed to ignore, strike from your memory, any reference to the most recent comment of the witness. I believe that her testimony is more directed toward other acts committed by the Defendant, which you are not to consider as proof of his character in order to show that he acted in conformance with that character. If you find that the evidence of other wrongs or other acts is true that the Defendant committed them, then you may consider that evidence only for the purpose of deciding

7.

whether it proves in this case the Defendant's motive, opportunity, intent or purpose or plan or knowledge of circumstances surrounding the offense charged in this trial, but you cannot consider it for any other purpose, so you may continue.

In her remaining testimony, Wheeler made no further mention of prison.

{¶ 18} Finally, Detective Kiddey testified. He indicated he became part of the investigation on May 15, 2019, after the report was received by Children Services. He testified that he spoke to appellant concerning the allegations, and appellant's history with A.L. was addressed, with appellant admitting that "similar things of that nature happened with [A.L.]." Detective Kiddey otherwise testified that no physical evidence of sexual assault was collected.

{¶ 19} After Detective Kiddey's testimony, the prosecution rested its case. Appellant moved for acquittal as to all charges, and the trial court denied the motion. The prosecution, however, moved to dismiss all but two counts of rape and one count of gross sexual imposition, citing the evidence in the record that supported those three counts. The trial court granted the motion to dismiss, and the case proceeded on one count of rape arising from events occurring between January 1 and May 9, 2019, gross sexual imposition arising from events occurring between January 1 and May 9, 2019, and rape arising from events occurring between July 1 and December 31, 2018.

8.

{¶ 20} After appellant had an opportunity to confer with his trial counsel, the defense rested without appellant taking the stand to testify.

{¶ 21} Prior to closing argument, appellant requested a lesser-included offense instruction for gross sexual imposition, arguing sufficient evidence of touching, but not insertion to support the rape charges, because the jury could determine L.G. was not credible. The prosecution opposed a lesser-included offense instruction, based on L.G.'s testimony that appellant inserted his finger and tongue into her vagina. The trial court noted the testimony, and denied the request for a lesser-included offense instruction as to the rape charges.

{¶ 22} Counsel presented their final argument, with the prosecutor arguing the evidence required conviction, and the defense arguing a lack of physical evidence and no credible testimony of abuse as a complete defense to the charges. The trial court instructed the jury on the law. As part of its instruction, the trial court repeated the limiting instruction regarding other acts, emphasizing the jury could "not consider [other acts] to prove the character of the Defendant in order to show that he acted in conformity or in accord with that character." The trial court also instructed the jury that the "fact that the Defendant did not testify" could not be considered "for any purpose."

{¶ 23} During deliberations, the jury requested "a better explanation" for gross sexual imposition. In response, the trial court repeated the definition of "sexual contact" for the jury. The jury later returned a verdict of guilty as to the two charges of rape and one charge of gross sexual imposition.

9.

{¶ 24} On January 13, 2020, the trial court held the sentencing hearing. The trial court noted appellant's conviction "on two counts of rape of a child under 10 and one count of gross sexual imposition." The prosecution requested maximum sentences, including life without parole. Appellant provided a statement in mitigation, arguing he worked hard to move forward after going to prison for his conduct with A.L., and he did nothing to "draw" A.L. and her daughter "back in." He admitted his past conduct with A.L., but maintained his innocence regarding the present case. Appellant also expressed regret that he did not take the stand to defend himself, arguing L.G.'s testimony was coaxed by the prosecution and not truthful.

{¶ 25} After considering the record and statement of appellant, the trial court imposed sentences of life imprisonment without parole as to each of the rape charges, and ordered the sentences to be served concurrently. As to the gross sexual imposition charge, the trial court imposed a term of 60 months, also to run concurrently. The trial court designated appellant a Tier III sex offender.

{¶ 26} From this judgment, appellant filed a timely appeal.

### III. Assignments of Error

{¶ 27} In challenging his conviction, appellant raises the following assignments of error:

I. IT WAS ERROR TO NOT GRANT THE MISTRIAL AFTER

THE VIOLATION OF THE COURT ORDER REGARDING

TESTIMONY ABOUT THE DEFENDANT/APPELLANT'S PRIOR

CRIMINAL RECORD AND PRISON SENTENCE.

II. IT WAS ERROR NOT TO INSTRUCT ON THE LESSER

INCLUDED OFFENSE OF GROSS SEXUAL IMPOSITION

III. DEFENDANT/APPELLANT WAS DEPRIVED OF HIS

RIGHT TO COMPETENT COUNSEL BY COUNSEL NOT

PERMITTING HIM TO TESTIFY IN THE CASE.

### IV. Analysis

### A. Mistrial

{¶ 28} In his first assignment of error, appellant argues the trial court erred in denying his motion for a mistrial after mention of "prison" in Wheeler's testimony. In support, he argues "the ends of public justice" required a mistrial because the mention of prison, in combination with the testimony that appellant "liked pre-pubescent girls 20 years before" was inflammatory. "The granting or denying of a mistrial under Crim.R. 33 rests within the sound discretion of the trial court." *State v. Sage*, 31 Ohio St.3d 173, 182, 510 N.E.2d 343 (1987), citing *State v. Williams*, 43 Ohio St.2d 88, 330 N.E.2d 891 (1975).

{¶ 29} In this case, appellant challenges the reference to his time in prison as part of the "other acts" evidence of his prior conduct with A.L. At trial, however, appellant raised no objection to any of this "other acts" evidence after his motion in limine was denied, remaining quiet throughout A.L.'s graphically detailed testimony. Instead, his

11.

trial counsel questioned A.L. about this past conduct on cross-examination, suggesting that A.L. was not truthful because she permitted L.G. to spend time at appellant's home. Error or irregularity in the proceedings require a mistrial only if it affects a defendant's substantial rights and prevents a fair trial. *Sage* at 182; *State v. Franklin*, 62 Ohio St.3d 118, 127, 580 N.E.2d 1 (1991), citing *Illinois v. Somerville*, 410 U.S. 458, 462-463, 93 S.Ct. 1065, 35 L.Ed.2d 425 (1973).

{¶ 30} Appellant's argument pertaining to rights focuses mainly on the other acts evidence, and not the issue raised in requesting a mistrial: the prejudicial effect of mentioning appellant's time in prison. While the prosecutor did not intend to elicit the testimony, Wheeler repeated appellant's own statement to her when she questioned him regarding his history with A.L. In arguing error, appellant articulates a general, philosophical position without reference to the specifics of his trial. Significantly, appellant fails to address the curative instruction, or argue its ineffectiveness in remedying any prejudice arising from the prison reference.

{¶ 31} Courts do not declare a mistrial based on the mere mention of prison, rather, lacking demonstration of substantial prejudice, the error may be remedied with a curative instruction. *See State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 175. Here, the trial court provided a limiting instruction, and the other testimony—not challenged at trial—was overwhelming. Therefore, considering the fleeting reference and other evidence, the curative instruction was proper. *See, e.g., State v. Bell*, 2015-Ohio-1711, 34 N.E.3d 405, ¶ 43 (1st Dist.) (no error where trial court gave

limiting instruction to disregard testimony that defendant had been to prison)[2]; *State v. Slaughter,* 2d Dist. Montgomery No. 26135, 2015-Ohio-5303, ¶ 18 (passing reference to prison, without detail, properly addressed with curative instruction considering the weight of admissible evidence of guilt); *State v. Morgan*, 84 Ohio App.3d 229, 234, 616 N.E.2d 941 (5th Dist.1992) (mistrial not required where comment isolated and defense rejected a curative instruction); *State v. Ellison*, 2017-Ohio-284, 81 N.E.3d 853, ¶ 30-31 (8th Dist.) (statement isolated, not specifically elicited by the state, and evidence of guilt overwhelming); *State v. Pruiett*, 9th Dist. Summit No. 21796, 2003-Ohio-3256, ¶ 6 (despite three references to prior incarceration, evidence of guilt overwhelming and jury presumed to follow curative instruction).

{¶ 32} Considering the record, including L.G.'s and A.L.'s testimony, there was overwhelming evidence of guilt. Furthermore, after Wheeler's reference to prison, no further mention occurred, and the trial court provided a limiting instruction. No trial can be error-free and perfect, and "the Constitution does not guarantee such a trial." (Citations omitted.) *State v. Zuern*, 32 Ohio St.3d 56, 60, 512 N.E.2d 585 (1987). Furthermore, applying a "*per se* rule of exclusion" and ordering a mistrial whenever mention of a prior conviction occurred would undermine "the presumption of the effectiveness of the trial court's curative instructions" and cast doubt on "the effectiveness of the juror's oaths." *Zuern* at 61, citing *State v. Ferguson*, 5 Ohio St.3d

---

[2] *Abrogated on other grounds by State v. Barker*, 149 Ohio St.3d 1, 2016-Ohio-2708, 73 N.E.2d 365.

13.

160, 450 N.E.2d 265 (1983). Accordingly, we find no abuse of discretion by the trial court in denying appellant's motion for a mistrial, and his first assignment of error is without merit and found not well-taken.

## B. Lesser-Included Instructions

{¶ 33} In his second assignment of error, appellant argues the trial court erred in refusing to instruct the jury on the lesser-included offense of gross sexual imposition as an alternative to the rape charges. In support, he argues the lack of physical evidence and lack of disrobing, which, when combined with L.G.'s testimony, failed to establish penetration, a required element to sustain a rape conviction.

{¶ 34} "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense." *State v. Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294 (1988), paragraph three of the syllabus. Gross sexual imposition is a lesser-included offense of rape. *State v. Johnson*, 36 Ohio St.3d 224, 226, 522 N.E.2d 1082 (1988).

{¶ 35} A lesser-included offense instruction permits a jury "to find the defendant guilty of any lesser offense necessarily included in the offense charged." *State v. Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 19, quoting *Beck v. Alabama*, 447 U.S. 625, 633, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980). However, the instruction is required only where the facts warrant it. *Wine* at ¶ 20. After viewing the evidence most

14.

favorably for the defendant, the trial court should charge on a lesser-included offense "where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *Wine* at ¶ 21-22.

{¶ 36} Here, appellant argues that the evidence would support an acquittal on rape, because L.G. testified only of "sexual contact" and not the required "sexual conduct" for a rape conviction. "Sexual conduct" is defined to include "insertion, however slight, of any part of the body * * * into the vaginal or anal opening of another." R.C. 2907.01(A).

{¶ 37} The record contradicts appellant's argument regarding contact versus conduct, because, at trial, L.G. testified regarding appellant's conduct as follows:

Q: And what exactly did he do to you, [L.G.]?

A: Um, he touched me in my private.

Q: Okay. [L.G.], how did he touch you in your private?

A: Ah, he put his fingers in my private and he licked my private.

Q: Okay. And [L.G.], I have to ask this question for the record, but when you're talking about your private, do you know what the adult word is for that?

A: Yeah.

Q: What is that?

A: Your crotch.

Q: The crotch?

A: Uh huh.

15.

Q: Okay. Have you heard the word "vagina" before?

A: (Nod indicating yes).

Q: Is that where he was touching you?

A: Yeah.

Q: Okay. And did his finger go into your vagina?

A: Yeah.

Q: And did his tongue go into your vagina?

A: Yeah.

Q: How many times did that happen, [L.G.]?

A: Every weekend.

{¶ 38} In challenging this testimony, appellant argues the evidence of penetration resulted from only leading questions, and based on the lack of physical evidence or evidence of undress, the jury could have chosen not to believe L.G.'s testimony regarding rape and returned a guilty verdict as to the lesser-included offense of gross sexual imposition. Appellant's defense, however, was based on a complete denial of all allegations, and in closing argument, his trial counsel urged the jury to consider "what would motivate a child to exaggerate or make things up[.]"

{¶ 39} As to the issue raised by appellant, the law is well-settled. Appellant "was entitled to the unqualified right to have the prosecution prove every element of the offense of rape beyond a reasonable doubt, and if the state was unable to do so, he was entitled to an acquittal." *State v. Johnson*, 36 Ohio St.3d 224, 228, 522 N.E.2d 1082

16.

(1988), citing *State v. Kilby*, 50 Ohio St.2d 21, 24, 361 N.E.2d 1336 (1977). Furthermore, the alternative for which appellant argues, a "compromised verdict upon another crime," has been specifically rejected as a means to "dicker away" an accused's liberty. *Johnson* at 228, citing *Kilby* at 24.

{¶ 40} Here, the testimony indicated penetration, with a finger and a tongue. Appellant, moreover, argued a complete defense, and never attempted to challenge L.G.'s "ability to differentiate between mere touching and actual penetration of a body cavity." *Johnson* at 227. "In view of such defense, the jury could not consistently or reasonably disbelieve [the testimony] as to penetration and, at the same time, consistently and reasonably believe [the] testimony on the contrary theory of mere touchings specifically related to [the] charged events." *Id.* Thus, appellant had no entitlement to a lesser-included instruction on gross sexual imposition. *Id.* Appellant's second assignment of error, accordingly, is not well-taken.

## C. Right to Testify

{¶ 41} In his third and final assignment of error, appellant argues his trial counsel was ineffective in not permitting him to testify. We review claims of ineffective assistance of counsel according to the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus.

{¶ 42} To satisfy the *Strickland* test, appellant must first show that his trial counsel's performance was so deficient, he was denied his Sixth Amendment guarantee

17.

to counsel. *Strickland* at 687. In reviewing this claim, a court is "highly deferential" and will "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland* at 689. Additionally, "a properly licensed attorney is presumed competent" for purposes of ineffective assistance claims. *State v. Krueger*, 176 Ohio App.3d 95, 2008-Ohio-1566, 890 N.E.2d 332, ¶ 35 (6th Dist.), citing *State v. Lott*, 41 Ohio St.3d 160, 174, 555 N.E.2d 293 (1990).

{¶ 43} If deficiency is demonstrated, appellant must next show that this deficient performance resulted in prejudice. *Strickland* at 687. To demonstrate prejudice, appellant "must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraphs two and three of the syllabus. We only consider prejudice, however, if appellant has first demonstrated deficient performance of his trial counsel. *Strickland* at 689.

{¶ 44} The deficiency argued, in this case, was trial counsel's strategy that included preventing appellant from testifying in his own defense so that appellant's prior conviction would not be placed in evidence. Once mention of "prison" was made, appellant argues that his trial counsel should have adjusted his strategy, and permitted him to testify and deny the allegations. The decision on whether to testify is purely tactical, and may not be challenged as ineffective assistance absent a showing of coercion in reaching that decision. *State v. Ryan*, 6th Dist. Wood No. 2006-Ohio-5120, ¶ 23, citing *State v. Bey*, 85 Ohio St.3d 487, 499, 709 N.E.2d 484 (1999), quoting *Brooks v. Tennessee*, 406 U.S. 605, 612, 92 S.Ct. 1891, 32 L.Ed.2d 358 (1972); *State v. Winchester*,

18.

8th Dist. Cuyahoga No. 79739, 2002-Ohio-2130, ¶ 12, citing *Hutchins v. Garrison*, 724 F.2d 1425, 1436 (4th Cir.1983) and *Lema v. United States*, 987 F.2d 48, 52-53 (1st Cir.1993).

{¶ 45} Appellant argues no coercion, and points to nothing in the record that might demonstrate coercion. No record was made of appellant's decision not to testify prior to the defense resting, but before trial, appellant asked the trial court if he had that right, and the trial court assured him he did, while also cautioning appellant of potential disadvantages should he testify. Rather than arguing coercion, appellant raises various other tactical decisions in cross-examining witnesses, and cites appellant's "eloquent statements of his innocence at sentencing" to support his claim of ineffective assistance based on his wish to testify. With no record of coercion, however, we find no demonstration of deficient performance based on a tactical decision, and appellant's third and final assignment of error is without merit and found not well-taken.

## V. Conclusion

{¶ 46} For the forgoing reasons, we affirm the judgment of the Sandusky County Court of Common Pleas. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J.          _____
                                                    JUDGE

Gene A. Zmuda, P.J.

                                        _____
Myron C. Duhart, J.                                JUDGE
CONCUR.

                                        _____
                                                    JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.