[Cite as *State v. Ellison*, 2017-Ohio-284.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

STATE OF OHIO,                          :      Case No. 16CA16

    Plaintiff-Appellee,                :

    v.                                      :      <u>DECISION AND</u>
<u>JUDGMENT ENTRY</u>

VERNON ELLISON, JR.,                    :
                                    **RELEASED: 1/20/17**

    Defendant-Appellant.               :

<u>APPEARANCES</u>:

Eric J. Allen, The Law Office of Eric J. Allen, Ltd., Columbus, Ohio, for appellant.

Anneka P. Collins, Highland County Prosecuting Attorney, Hillsboro, Ohio, for appellee.

Harsha, J.

{¶1}    A jury convicted Vernon Ellison of two counts of rape of his daughter, a child under ten years of age in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, and the trial court sentenced him to consecutive terms of life imprisonment without parole.

{¶2}    Ellison asserts that the trial court failed to dispose of fifteen felony counts of pandering obscenity of a minor, which renders the court's sentencing entry nonfinal. We reject his assertion because the trial court issued two journal entries that specified that these charges were dismissed.  Thus, we have jurisdiction to consider the merits of his appeal.

{¶3}    Next, Ellison contends that the trial court committed plain error because it failed to declare a mistrial or provide a curative instruction when a defense witness mentioned that Ellison had been in prison.  Ellison forfeited his claim because he neither requested a mistrial nor a curative instruction at trial.  And Ellison has not established

any plain error by the trial court in failing to sua sponte declare a mistrial or give a curative instruction. The statement was isolated and not specifically elicited by the state's questioning of the witness on cross-examination. Based on Ellison's daughter's credible testimony detailing his two rapes of her when she was less than ten years old, Ellison's apology to her for his sexual assaults of her during a conversation arranged by the police, and Ellison's confession to police that he had engaged in sexual intercourse with his daughter, the outcome of the trial would not have clearly been otherwise. This case does not present exceptional circumstances or a manifest miscarriage of justice warranting the application of the plain-error rule.

{¶4} Finally, Ellison argues that he was denied the effective assistance of his trial counsel when counsel elicited admissions from him during his direct examination that he engaged in sexual conduct with his daughter. Ellison can prove neither deficient performance by his trial counsel nor prejudice. Ellison had already confessed to the police that he had engaged in sexual intercourse with his daughter, so his trial counsel's decision to concede that and instead claim that his daughter was above the age required for convictions of the charged rapes constituted sound trial strategy.

{¶5} Therefore, we overrule Ellison's assignments of error and affirm his convictions and sentence.

## I. FACTS

{¶6} The Highland County Grand Jury returned a superseding indictment charging Ellison with two counts of rape involving S.E., a minor less than 10 years of age, in violation of R.C. 2907.02(A)(1)(b), a felony of the first degree, and 15 counts of pandering sexual material involving a minor in violation of R.C. 2907.322(A)(5), a felony

of the fourth degree.  Ellison, who was represented by counsel, entered a plea of not guilty to the charges.

{¶7}    Before the commencement of a jury trial on the rape charges, the trial court granted the state's oral motion to dismiss the remaining 15 counts of the superseding indictment concerning pandering sexual material involving a minor. Subsequent journal entries regarding conviction and sentence on the rape charges reflected the dismissal of the pandering charges.

{¶8}    A jury trial on the rape charges elicited the following evidence.  S.E., Ellison's daughter, testified that she was born in 1993 and that although she lived with her mother until 1998, she began regular visitation with Ellison in 1998 when she was five years old.  S.E. further testified that when she was six or seven years old, she visited Ellison when he lived with his mother in a two-story home on State Route 134 in Highland County.

{¶9}    One night during that period S.E. was sleeping in bed with Ellison when she saw him masturbating, and he asked her to watch him.  When she refused, he told her that if she didn't watch him, he would not take her to the beach the next day.  S.E. again refused, which prompted Ellison to yell to his mom downstairs that they were not going to the beach the next day.

{¶10}  S.E. then rolled back over and fell asleep, but when she woke up later that night, Ellison touched her—at first outside her panties, but then he moved her panties to the side and stuck his thumb inside her vagina and continued to keep it inside her until he eventually fell asleep.  When he fell asleep, S.E. pulled Ellison's thumb out of her vagina.  According to S.E., when Ellison put his thumb in her vagina, he kept moaning

"Kim," which probably referred to one of Ellison's ex-wife's sisters. S.E. testified that this incident occurred when she was six or seven years old because that was when they lived at the house on State Route 134.

{¶11} Ellison then moved to a trailer on Sharpsville Road in Highland County to live with his then-wife Julie and her son and daughter. S.E. testified that when she was eight or nine years old and visiting Ellison at this trailer, she had fallen asleep on the floor with her body half in a small bedroom and half in a hallway. Ellison then walked by her and rubbed the outside of her underwear before pulling it aside and sticking his fingers inside her vagina and then pulling them out and laughing.

{¶12} According to S.E., these were not the only two incidents in which Ellison sexually assaulted her. She testified that it happened a lot, culminating in Ellison engaging in sexual intercourse with her when she was 11 or 12 years old. She continued being raped by Ellison until she was 15 or 16 years old, when Ellison met his current wife Shelly, whom he married in 2011. She did not tell anybody about the sexual assaults during this period because she was scared of Ellison. S.E. moved out of their home after she turned 18 and subsequently met her boyfriend Josh and gave birth to a son. After giving birth to her son, S.E. realized that the sexual assaults committed by Ellison were not her fault. S.E. then disclosed the sexual assaults to Ellison's wife, Shelly, who encouraged her to disclose the incidents to the police. Shelly confirmed this in her testimony.

{¶13} Detective Jennifer Swackhamer, an officer employed by the Highland County Sheriff's Office to investigate sexual assaults and child abuse, testified that S.E. informed her in December 2015 that her father, Ellison, had sexually assaulted her for

several years. Detective Swackhamer arranged for S.E. to record a conversation between her and Ellison to obtain evidence about the assaults. S.E. texted Ellison that she wanted him back in her life, but she first needed answers about why he did those things to her. They arranged for Ellison to come to her home to discuss it.

{¶14} During the recorded conversation, S.E. asked her father specifically about the incident at his mother's residence on State Route 134 in which he raped her by inserting his thumb in her vagina, and he apologized to her. When she confronted Ellison about him having sexual intercourse with her, he told her that he was sorry and that his actions were how he showed her that he loved her. At no point during their confrontation did Ellison ever deny sexually assaulting her.

{¶15} After the confrontation the police arrested Ellison. Detective Swackhamer interviewed him and Ellison eventually admitted to sexually assaulting his daughter, but he claimed that he thought she was older. Detective Swackhamer corroborated S.E.'s prior testimony.

{¶16} Ellison testified on his own behalf, and on direct examination, he admitted that he had engaged in sexual conduct with his daughter, S.E., when she was 16 years old. On cross-examination he conceded that he had sexual intercourse with his daughter more than once, but claimed that none of it happened when she was a child.

{¶17} The jury returned verdicts finding Ellison guilty of the rapes and that S.E. was under ten years old when they occurred. The trial court entered judgment reflecting Ellison's convictions and sentenced him to consecutive sentences of life imprisonment without parole.

II. ASSIGNMENTS OF ERROR

**{¶18}** Ellison assigns the following errors for our review:

I. THE TRIAL COURT FAILED TO DISPOSE OF COUNTS THREE THROUGH SEVENTEEN BY ENTERING CONVICTIONS OR BY SENTENCING THE APPELLANT.

II. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT FAILED TO DECLARE A MISTRIAL OR PROVIDE A CURATIVE INSTRUCTION WHEN A WITNESS MENTIONED APPELLANT HAD BEEN IN PRISON.

III. APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN COUNSEL ELICITED ADMISSIONS FROM HIM DURING DIRECT EXAMINATION IN VIOLATION OF THE SIXTH AMENDMENT TO THE FEDERAL CONSTITUTION MADE APPLICABLE TO THE STATE OF OHIO BY THE FOURTEENTH AMENDMENT.

### III. LAW AND ANALYSIS

#### A.  Final Appealable Order

**{¶19}** In his first assignment of error Ellison asserts that the trial court failed to dispose of fifteen counts of pandering obscenity of a minor, which rendered the court's sentencing entry not final and appealable.

**{¶20}** The Ohio Constitution limits an appellate court's jurisdiction to the review of "final orders" of lower courts.  Ohio Constitution, Article IV, Section 3(B)(2).  In accordance with this constitutional directive, we " 'must sua sponte dismiss an appeal that is not from a final appealable order.' "  *State v. Brewer*, 4th Dist. Meigs No. 12CA9, 2013-Ohio-5118, ¶ 5, quoting *State v. Marcum*, 4th Dist. Hocking Nos. 11CA8 and 11CA10, 2012-Ohio-572, ¶ 6.

**{¶21}** The General Assembly has enacted R.C. 2505.02 to specify which orders are final.  *Smith v. Chen*, 142 Ohio St.3d 411, 2015-Ohio-1480, 31 N.E.3d 633, ¶ 8.  To constitute a final appealable order under R.C. 2505.02, a judgment of conviction and sentence must satisfy the substantive provisions of Crim.R. 32(C) and include:  (1) the

fact of conviction; (2) the sentence; (3) the judge's signature; and (4) the time stamp indicating the entry upon the journal by the clerk. *State v. Lester*, 130 Ohio St.3d 303, 2011-Ohio-5204, 958 N.E.2d 142, paragraph one of the syllabus.

**{¶22}** The Supreme Court of Ohio has also held that in a criminal cases involving multiple counts, a final order need not contain a reiteration of those counts that were resolved on the record in other ways, such as dismissal, nolled counts, or not guilty findings. *State ex rel. Rose v. McGinty*, 128 Ohio St.3d 371, 2011-Ohio-761, 944 N.E.2d 672, ¶ 3. But unless the charges that do not result in conviction have been terminated by a journal entry, the hanging charges prevent the conviction from being a final order under R.C. 2505.02(B) because it does not determine the action by resolving the entire case. *See State v. Gillian*, 4th Dist. Gallia No. 15CA3, 2016-Ohio-3232, ¶ 6.

**{¶23}** Ellison claims that the trial court's sentencing entry is not a final appealable order because it failed to resolve the 15 hanging charges of pandering obscenity of a minor. This claim is meritless. The trial court's sentencing entry included the specification that "[t]he remaining count(s) of the indictment * * * are * * * hereby nolled and dismissed as to the Defendant named herein." And an earlier entry stated that "[p]rior to the commencement of trial, the Court granted the State's oral motion to dismiss Counts 3 through 17 without prejudice." These properly dismissed charges were not hanging charges; the sentencing entry appealed constitutes a final appealable order. Thus, we have jurisdiction to address the merits of Ellison's appeal. We overrule Ellison's first assignment of error.

B. Plain Error

**{¶24}** In his second assignment of error Ellison contends that the trial court committed plain error when it failed to declare a mistrial or provide a curative instruction when a witness mentioned that Ellison had been in prison.

**{¶25}** During the state's cross-examination of Ellison's sister, defense witness Sandra Gall, the following exchange occurred:

Q. Uh, how old was [S.E.] when she started visiting with your brother?

A. Uh, she seen him before he went into prison, and then after he got out.

**{¶26}** Ellison failed to request a mistrial or a curative instruction at trial so he forfeited the issue, absent plain error. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 152; *State v. Fouts*, 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, ¶ 58 ("Failure to object constitutes forfeiture of any challenges on appeal except for plain error").

**{¶27}** The test for plain error is stringent. *State v. Mullins*, 4th Dist. Scioto No. 15CA3716, 2016-Ohio-5486, ¶ 30. A party claiming plain error has the burden of demonstrating that (1) an error occurred, (2) the error was obvious, and (3) the error affected the outcome of the trial. *Id.* at ¶ 30, citing *State v. Davis*, 116 Ohio St.3d 44, 2008-Ohio-2, 880 N.E.2d 21. "We will notice plain error 'only to prevent a manifest miscarriage of justice.' " *Fouts* at ¶ 59, quoting *State v. Long*, 53 Ohio St.3d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. "Reversal is warranted only if the outcome of the trial clearly would have been different absent the error." *State v. Hill*, 92 Ohio St.3d 191, 203, 749 N.E.2d 274 (2001).

**{¶28}** Ellison cites three cases in support of his contention that the trial court committed plain error when the defense witness testified on cross-examination that he

had been in prison.  These cases note the general rule that prohibits the introduction of evidence tending to show that a defendant has committed another crime wholly independent of the offense for which he is on trial.  *State v. Breedlove*, 26 Ohio St.3d 178, 183, 271 N.E.2d 238 (1971), citing *State v. Hector*, 19 Ohio St.2d 167, 249 N.E.2d 912 (1969), paragraph one of the syllabus; *State v. Allen*, 29 Ohio St.3d 53, 55, 506 N.E.2d 199 (1997) ("The existence of a prior offense is such an inflammatory fact that ordinarily it should not be revealed to the jury unless specifically permitted under statute or rule").

**{¶29}**  Nevertheless, none of the cited cases involved the invocation of the plain-error doctrine because timely objections to the challenged other-acts evidence occurred at trial.

**{¶30}**  Moreover, the statement by the defense witness here was isolated and was not specifically elicited by the state's questioning of the witness on cross-examination.  That is, there is no indication that the state knew that the witness would volunteer testimony about Ellison being in prison when the witness was asked how old S.E. was when she started visiting Ellison.  These facts readily distinguish the cited cases from this one.

**{¶31}**  Finally, even assuming that the trial court erred in permitting this testimony without a curative instruction, the evidence was so overwhelming that Ellison was guilty of raping his daughter no reasonable juror could have found otherwise.  Based on S.E.'s credible testimony detailing Ellison's two rapes of her when she was less than ten years old by digitally penetrating her vagina, Ellison's apology to her for his sexual assaults of her during the conversation arranged by the police, and Ellison's confession to the

police that he had engaged in sexual intercourse with her, the outcome of the trial would not clearly have been otherwise but for any error.

**{¶32}** Therefore, this case does not present the exceptional circumstances or manifest miscarriage of justice required to invoke the plain-error doctrine. We overrule Ellison's second assignment of error.

### C.  Ineffective Assistance of Counsel

**{¶33}** In his third assignment of error Ellison argues that he was denied the effective assistance of his trial counsel when he elicited admissions from him during direct examination that he engaged in sexual conduct with his daughter.

**{¶34}** To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Failure to satisfy either part of the test is fatal to the claim. *Strickland* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989). Because this issue cannot be presented at trial, we conduct the initial review. *State v. Plymale*, 4th Dist. Gallia No. 15CA1, 2016-Ohio-3340, ¶ 34.

**{¶35}** The defendant has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. In reviewing the claim of ineffective assistance of counsel, we must indulge in "a strong presumption that counsel's conduct falls within

the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Strickland* at 697; *Plymale* at ¶ 35.

**{¶36}** Ellison cannot prove either deficient performance by his trial counsel or prejudice. Ellison had already confessed to the police that he had engaged in sexual intercourse with his daughter, so his trial counsel's decision to concede that and instead claim that his daughter was above the age required for convictions of the charged rapes constituted sound trial strategy. Ellison effectively concedes this on appeal by acknowledging that this "may have been the only [defense] available to him given the evidence." And because of his confession to the police that he had engaged in sexual intercourse with his daughter, there is not a reasonable probability that the result of the proceeding would have been different if his trial counsel had not elicited this testimony at trial. We overrule his third assignment of error.

## IV. CONCLUSION

**{¶37}** The order appealed from is final and appealable and we have found no merit in Ellison's contentions on appeal. Having overruled his assignments of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, J.: Concurs in Judgment and Opinion.
McFarland, J.: Concurs in Judgment Only.

For the Court

BY: _____
William H. Harsha, Judge

## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**