[Cite as *State v. Esters*, 2023-Ohio-3699.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 30329 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRYAN ESTERS | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 18 08 2831(B) |

DECISION AND JOURNAL ENTRY

Dated: October 11, 2023

STEVENSON, Judge.

{¶1}    Appellant, Bryan Esters, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    On the morning of July 1, 2018, Andre Warren ("Warren") took his young son to Julian's restaurant in Akron for breakfast. After engaging in a verbal argument with another patron, Warren took his son outside the restaurant. The child's mother picked up the boy and he left Julian's. Warren then went back inside the restaurant and placed a to-go order. While he waited for his food, Warren sat down and interacted with someone on a cell phone.

{¶3}    Mr. Esters soon arrived and entered the restaurant, making brief contact with Warren. Mr. Esters then walked out of the restaurant and waited outside.

{¶4}     Warren exited the restaurant after receiving his to-go order. Mr. Esters followed Warren. Almost simultaneously, three other individuals, T.B., M.S., and D.T., arrived at the restaurant in the same vehicle.

{¶5}     As T.B. and D.T. exited their vehicle and walked to its rear, Warren drew his revolver and opened fire, hitting the vehicle and both men. Immediately after Warren began firing, Mr. Esters came up on Warren's right side, raised a semiautomatic pistol, and began firing at T.B. and D.T. T.B. fell on the gravel and D.T. fell behind their vehicle. Mr. Esters followed D.T. around the vehicle, firing. T.B. survived the incident, but D.T. did not.

{¶6}     There were seven separate gunshot wounds on D.T.'s body at autopsy. The bullets in D.T.'s body were from two different weapons, one weapon being Warren's revolver.

{¶7}     It was determined that a bullet that was not fired from Warren's revolver entered D.T.'s buttocks, traveled upward into the left side of his chest, and lodged near his lung.  Summit County's chief medical examiner, who performed D.T.'s autopsy, testified that if D.T. had only suffered this gunshot wound, "[i]f not treated, it could cause death."  This gunshot wound alone could cause death as it resulted in "bleeding into the lung area."  The medical examiner opined that this gunshot wound was a contributing factor to D.T.'s death.

{¶8}     Warren fled the scene in his Mustang and Mr. Esters fled in a white Nissan. Both men drove away in the same direction and both ran the same stop sign one block north of the restaurant. Warren made it through the intersection unscathed, but Mr. Esters crashed his vehicle into another vehicle. Warren stopped and helped Mr. Esters transfer items from the now disabled Nissan into Warren's vehicle. The two men fled the accident scene together in Warren's vehicle.

{¶9}     Police found a black smartphone with a blue charger cord in the Nissan, along with other cell phones. When police were able to extract data from the black smartphone, they found

that it contained photos of Mr. Esters, photos of Warren with Mr. Esters, and social media accounts and other information that belonged to Mr. Esters.

{¶10} One of the photos on the smartphone bore a digital stamp indicating that it was taken the day before the July 1, 2018, shooting. In this photograph, Mr. Esters is wearing the same clothing and eyeglass frames that he was wearing in the restaurant surveillance videos. The phone's stored GPS coordinates placed it at the restaurant at the time of the shooting.

{¶11} Police also found in the Nissan documents with Mr. Esters' name and two bags of men's clothing. A forensic scientist testified that Mr. Esters' DNA profile was the major profile found on the ballcap in the Nissan and its steering wheel. The forensic scientist explained that "both of the major profiles on those items [the ballcap and steering wheel] were rarer than one in a trillion. And what that means is if I look at a trillion DNA profiles, I would only expect one of those to be consistent with that profile that I've seen on those items." The forensic scientist testified that when the profile found on the ballcap and steering wheel "was compared to [Mr. Esters'] known standard, it was consistent with his known profile."

{¶12} In addition to other testimony, two Akron detectives who viewed the restaurant's surveillance videos of the July 1, 2018, shooting testified at trial. Both detectives identified Mr. Esters as the individual with Warren.

{¶13} Police arrested Warren shortly after the shooting. A jury found Warren guilty and Warren appealed. This Court affirmed Warren's murder and felonious assault convictions in *State v. Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990.

{¶14} Mr. Esters was charged with two counts of murder with firearm specifications, three counts of felonious assault with firearm specifications, and one count of having a weapon while

under disability. A supplemental indictment charged Mr. Esters with one count of carrying a concealed weapon and one count of failure to stop after an accident.

{¶15} A jury found Mr. Esters guilty of all counts, except Count 5 and the firearm specification attached to Count 5. The trial court made findings for consecutive sentences and merger and sentenced Mr. Esters to an aggregate term of 29 years to life in prison.

{¶16} Mr. Esters appeals his convictions raising four assignments of error for this Court's review.

I.

**ASSIGNMENT OF ERROR ONE**

**BRYAN'S CONVICTIONS WERE NOT BASED UPON SUFFICIENT EVIDENCE AS A MATTER OF LAW, IN VIOLATION OF BRYAN'S FEDERAL AND OHIO CONSITUTIONAL RIGHTS.**

{¶17} Mr. Esters argues in his first assignment of error that his convictions were not based upon sufficient evidence as a matter of law, in violation of his Federal and Ohio Constitutional rights. We disagree.

{¶18} Whether a conviction is supported by sufficient evidence is a question of law, which this Court reviews de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "A challenge to the sufficiency of the evidence concerns the State's burden of production and is, in essence, a test of adequacy." *State v. Wilk*, 9th Dist. Medina No. 22CA0008-M, 2023-Ohio-112, ¶ 9, citing *In re R.H.*, 9th Dist. Summit No. 28319, 2017-Ohio-7852, ¶ 25; *Thompkins* at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. This Court does not, however, "resolve evidentiary conflicts or assess the credibility of witnesses,

because these functions belong to the trier of fact." *State v. Hall,* 9th Dist. Summit No. 27827, 2017-Ohio-73, ¶ 10.

{¶19} Mr. Esters argues that his murder and felonious assault convictions were not based on sufficient evidence as a matter of law. R.C. 2903.02(A), titled "Murder," prohibits "purposely caus[ing] the death of another * * *." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶20} R.C. 2903.11(A)(2), titled "Felonious Assault," prohibits "knowingly * * * caus[ing] or attempt[ing] to cause physical harm to another * * * by means of a deadly weapon * * *." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Physical harm to persons" includes "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A "deadly weapon" is "any instrument, device, or thing capable of inflicting death, and designed or specifically adapted for use as a weapon, or possessed, carried, or used as a weapon[,]" R.C. 2923.11(A), which includes firearms, *see* R.C. 2923.11(B)(1).

{¶21} Mr. Esters argues that, because the State already argued that Warren shot and killed D.T., it proceeded against him under a complicity theory. It is Mr. Esters' position that, while the State proved that Warren shot and killed D.T., it did not prove his complicity in the crime.

{¶22} R.C. 2923.03(A)(2), titled "Complicity," states that "[n]o person, acting with the kind of culpability required for the commission of any offense, shall * * * "[a]id or abet another in committing the offense[.]" While the statute does not define "aid or abet," the Ohio Supreme

Court has stated that to aid or abet is "'[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" *State v. Johnson*, 93 Ohio St.3d 240, 243 (2001), quoting Black's Law Dictionary 69 (7th Ed. Rev.1999). The State is "not required to explicitly allege complicity." *State v. McFarland*, 162 Ohio St.3d 36, 2020-Ohio-3343, ¶ 28. As the Court explained in *McFarland*, "R.C. 2923.03(F) provides that anyone who violates the complicity statute 'shall be prosecuted and punished as if he were a principal offender' and that an offender need not be charged under R.C. 2923.03, but instead may be charged with complicity in terms of the principal offense." *Id.*, citing *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 32. Mr. Esters was not charged with complicity under the statute but was charged with the principal offenses of murder and felonious assault.

{¶23} In considering the sufficiency of the evidence, this Court must view the evidence in a light most favorable to the prosecution. *Jenks,* 61 Ohio St. 3d at paragraph two of the syllabus. The trier of fact was presented with lay witness and expert testimony. Among the testimony presented, the jury heard two detectives testify and identify Mr. Esters in the restaurant surveillance videos. The jury was presented with the compiled restaurant surveillance videos, State's Exhibit 3, showing the July 1, 2018 shooting. The videos showed Warren and Mr. Esters with guns and firing at D.T. and T.B.

{¶24} The State presented testimony and evidence as to Mr. Esters' cell phones, documents, and DNA being found in the getaway car at the crash scene. A photograph on one of the cell phones, taken the day before the shooting, showed Mr. Esters wearing the same clothing and eyeglass frames as seen in the restaurant surveillance videos. The phone's GPS coordinates placed it at the restaurant at the time of the shooting. The phone also included social media accounts and other information belonging to Mr. Esters.

**{¶25}** The jury also heard testimony from the medical examiner who testified as to a second bullet, not from Warren's gun, that was found in D.T.'s body. The medical examiner testified that, if D.T. had only suffered a gunshot wound from this second bullet, "[i]f not treated, it could cause death" as it resulted in "bleeding into the lung area."

**{¶26}** Testimony and evidence were also presented as to the serious physical harm T.B. sustained in the July 1, 2018, shooting. A bullet hit T.B. in the hip and T.B. testified that the bullet remains lodged in his pelvis.

**{¶27}** Based on a thorough review of the record, we conclude that the evidence presented in the light most favorable to the State was sufficient to sustain the convictions of murder and felonious assault.

**{¶28}** Mr. Esters also argues that the State failed to disprove his defense of others claim. On December 21, 2022, the Ohio Supreme Court issued its decision in *State v. Messenger*, Slip Opinion No. 2022-Ohio-4562, which addressed whether the State's rebuttal of a defendant's self-defense or defense of others claim is subject to a sufficiency of the evidence review. *Id*. at ¶ 1. The Supreme Court held that it was not, stating:

> [t]he state's new burden of disproving the defendant's self-defense claim beyond a reasonable doubt is subject to a manifest-weight review on appeal, and the [appellate court] correctly declined to review the state's rebuttal of self-defense for sufficiency of the evidence.

*Id*. at ¶ 27; *State v. McElroy*, 9th Dist. Lorain No. 22CA011846, 2023-Ohio-1609*, ¶* 11. Accordingly, based on the authority of *Messenger*, this Court cannot apply a sufficiency analysis to Mr. Esters' defense of others claim.

**{¶29}** Upon a thorough examination of the record, this Court concludes that there is sufficient evidence upon which a jury could reasonably conclude that all elements of murder and

felonious assault were established beyond a reasonable doubt. Assignment of error number one is overruled.

## ASSIGNMENT OF ERROR TWO

**BRYAN'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, IN VIOLATION OF BRYAN'S FEDERAL AND OHIO CONSTITUTIONAL RIGHTS.**

{¶30}  Esters argues in his second assignment of error that his convictions were against the manifest weight of the evidence, in violation of his Federal and Ohio Constitutional rights. We disagree.

{¶31}  When deciding whether a criminal conviction is against the manifest weight of the evidence, this Court must consider the entire record and "weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A reversal on a manifest weight of the evidence challenge is reserved for exceptional causes where the evidence weighs heavily against the conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶32}  Mr. Esters argues that his murder and felonious assault convictions were against the manifest weight of the evidence. As previously set forth, Mr. Esters was convicted of murder, in violation of R.C. 2903.02(A), which prohibits "purposely caus[ing] the death of another * * *," and felonious assault, in violation of R.C. 2903.11(A)(2), which prohibits "knowingly * * * caus[ing] or  attempt[ing] to cause physical harm to another * * * by means of a deadly weapon * * *."

**{¶33}** Having reviewed the record, we cannot conclude that this is an exceptional case where the jury lost its way by convicting Mr. Esters. *See Otten* at 340. In addition to other extensive testimony, the jury heard two Akron detectives testify and identify Mr. Esters in the restaurant surveillance videos. The jurors watched the restaurant surveillance videos and saw the July 1, 2018, shooting. The jury saw Warren and an individual they determined to be Mr. Esters firing at D.T. and T.B. The jury was presented with testimony and evidence linking Mr. Esters to the getaway car at the crash scene. The jury also heard from the medical examiner who performed the autopsy on D.T. The medical examiner testified that, even if D.T. only suffered a gunshot wound from the second bullet that was not from Warren's gun, "it could cause death." Testimony and evidence were also presented as to the serious physical harm T.B. sustained in the shooting.

**{¶34}** It is well-established that "a trier of fact enjoys the best position to assess the credibility of witnesses." *State v. Tyus*, 9th Dist. Summit No. 29520, 2020-Ohio-4455, ¶ 57. *See also Prince v. Jordan*, 9th Dist. Lorain No. 04CA008423, 2004-Ohio-7184, ¶ 35 ("the jury is free to believe all, part, or none of the testimony of each witness."). This Court "'will not overturn a conviction as being against the manifest weight of the evidence simply because the trier of fact chose to believe the State's version of events over another version." *State v. Tolliver*, 9th Dist. Lorain No. 16CA010986, 2017-Ohio-4214, ¶ 15, quoting *State v. Barger*, 9th Dist. Medina No. 14CA0074-M, 2016-Ohio-443, ¶ 29.

**{¶35}** Upon our review of the entire record, we conclude that the jury, in resolving any conflicts in the evidence, did not clearly lose its way and create a manifest miscarriage of justice requiring a reversal of Mr. Esters' convictions. *See Otten*, 33 Ohio App.3d at 340. This is also not an exceptional case in which the evidence weighs heavily against the convictions. *See Thompkins*, 78 Ohio St.3d at 387.

{¶36}  With respect to Mr. Esters' claim that his convictions are against the manifest weight of the evidence due to a defense of others, Mr. Esters acknowledges that "his defense of a third-person was not brought up at trial." Mr. Esters further acknowledges that "there was no evidence that was presented that Bryan [Esters] thought Warren was defending himself * * *." Mr. Esters nonetheless relies on current law and argues that the State failed to present evidence to disprove a defense of others claim.

{¶37}  As this Court explained in *Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, at ¶ 12, in the past Ohio law required self-defense and defense of others "to be proven by a defendant by a preponderance of the evidence." Effective March 28, 2019, however, R.C. 2901.05 was amended to place the burden of proof on the State in self-defense and defense of other cases. Although the incident in this case occurred prior to March 28, 2019, Mr. Esters' trial occurred after March 28, 2019. Accordingly, R.C. 2901.05, as amended, applies. *State v. Brooks*, 170 Ohio St.3d 1, 2022-Ohio-2478, ¶ 23 ("We hold that the amendment to R.C. 2901.05 (enacted in H.B. 228) is not retroactive – it applies prospectively to all trials occurring after its effective date, regardless of when the underlying alleged criminal conduct occurred.")

{¶38}  The Supreme Court in *Messenger* analyzed R.C. 2901.05(A) and held that, pursuant to the statute, "the defendant bears the 'burden of going forward with the evidence of an affirmative defense[.]'" *Messenger*, Slip Opinion No. 2022-Ohio-4562, at ¶ 21.  "[T]here are no exceptions to the defendant's burden of production regarding affirmative defenses" under the statute. *Id.* A defendant still has the burden of going forward or asserting the affirmative defense, and as explained in *Messenger*,  the statutory requirement is that the State must then disprove the affirmative defense beyond a reasonable doubt.  *Id.* at ¶ 24.

{¶39} Because Mr. Esters did not raise defense of others at trial, the State did not have an obligation to disprove the defense. Even if the defense had been raised, based on the evidence presented including the restaurant surveillance videos which show Warren and Mr. Esters firing at D.T. and T.B., we cannot say that the jury lost its way and created such a manifest miscarriage of justice that the convictions must be reversed.

{¶40} Upon review, we conclude that Mr. Esters has not shown that this is an exceptional case where the jury lost its way by convicting him. *See Otten*, 33 Ohio App.3d at 340. Accordingly, his second assignment of error is overruled.

## ASSIGNMENT OF ERROR THREE

**BRYAN WAS UNFAIRLY PREJUDICED AS THE NATURE OF THE CRIME RESULTING IN HIS DISABILITY WAS INTRODUCED EVEN THOUGH THERE WAS A PRIOR STIPULATION AND THE SPECIFIC NATURE OF THE OFFENSE WAS NOT NEEDED TO ILLUSTRATE THE PRIOR CONVICTION.**

{¶41} Mr. Esters argues in his third assignment of error that he was unfairly prejudiced as the nature of the crime resulting in his disability was introduced even though there was a specific stipulation and the specific nature of the offense was not needed to illustrate the prior conviction. Mr. Esters maintains that "[t]he trial court abused its discretion by not offering a curative instruction[.]" For the reasons set forth below, Mr. Esters' third assignment of error is overruled.

{¶42} While Mr. Esters argues that the trial court should have given a curative jury instruction, the record establishes that Mr. Esters never requested a curative jury instruction. Instead, he requested a mistrial during voir dire that was denied. The failure to request a curative instruction at trial forfeits all but plain error on appeal. *State v. Ellison*, 4th Dist. Highland No. 16CA16, 2017-Ohio-284, ¶ 26; *State v. Cunningham*, 4th Dist. Ross No. 19CA3698, 2021-Ohio-416, ¶ 50; *State v. Freeman*, 8th Dist. Cuyahoga No. 91842, 2009-Ohio-5218, ¶ 23. Mr. Esters

has not set forth a plain error argument on appeal. "[T]his Court will not undertake a plain error analysis sua sponte when the appellant has failed to assert such an argument in his brief." *State v. Gray*, 9th Dist. Wayne No. 08CA0057, 2009-Ohio-3165, ¶ 7; *State v. Fazenbaker*, 9th Dist. Summit No. 29108, 2021-Ohio-3447, ¶ 17. This Court declines to create a plain error argument on Mr. Esters' behalf.

{¶43} Accordingly, Mr. Esters' third assignment of error is overruled.

## ASSIGNMENT OF ERROR FOUR

**BRYAN WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION; AND ARTICLE I, SECTION 10, OHIO CONSTITUTION.**

{¶44} Mr. Esters argues in his fourth assignment of error that he was denied effective assistance of counsel as guaranteed by the Sixth and Fourteen Amendments to the U.S. Constitution; and Article I, Section 10, of the Ohio Constitution. We disagree.

{¶45} To prevail on a claim of ineffective assistance of counsel, Mr. Esters must establish (1) his counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) but for his counsel's deficient performance, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A deficient performance is one that "fall[s] below an objective standard of reasonable representation." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph two of the syllabus. A court, however, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955). In addition,

to establish prejudice, Mr. Esters must show that there existed "a reasonable probability that, but for his counsel's errors, the outcome of the proceeding would have been different." *State v. Sowell*, 148 Ohio St.3d 554, 2016-Ohio-8025, ¶ 138.

{¶46} Both prongs under *Strickland* must be established to support an ineffective assistance of counsel claim. *Strickland* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

{¶47} Mr. Esters argues that trial counsel's representation was prejudicially deficient because counsel did not raise a defense of others claim. Mr. Esters maintains that "because trial counsel failed to raise a defense Bryan [Esters] had been entitled to, counsel's performance was deficient and the outcome of the trial would have been different." Mr. Esters further argues that trial counsel was deficient because counsel failed to call Warren as a witness.

{¶48} Based on the evidence in the record, we conclude that there was no basis for raising a defense of others claim. The restaurant surveillance videos shown at trial and admitted into evidence demonstrated that Warren opened fire at D.T. and T.B. without provocation and that, a split second later, Mr. Esters also began shooting at D.T. and T.B. Neither D.T. nor T.B. acted in a way to provoke Warren. As seen in the video, D.T. and T.B.'s arms were down and their hands were not at their waistbands. Mr. Esters intervened without provocation. "A person who intervenes in a struggle and has no duty to do so, acts at his own peril if the person assisted was in the wrong." *State v. Wenger*, 58 Ohio St.2d 336, 339 (1979). There was no basis for a defense of others claim and there was nothing Warren could have said to negate what the jury saw on the surveillance videos. Accordingly, we conclude that trial counsel's performance was not deficient.

{¶49} Even if deficient, Mr. Esters failed to establish that, but for his counsel's deficient performance, the result of trial would have been different. Even if a defense of others claim had been asserted, and even if Warren had testified that Mr. Esters was acting as a good Samaritan at the time of the offense, the State presented the surveillance videos showing Warren firing at D.T. and T.B., without provocation. As this Court recognized in *Warren*, 9th Dist. Summit No. 29455, 2020-Ohio-6990, at ¶ 14, "the State presented sufficient evidence, if believed, to disprove the 'at fault' element of self-defense, and the jury could have reasonably concluded beyond a reasonable doubt that Mr. Warren was the initial aggressor in the shooting incident." The surveillance videos show Mr. Esters, even if a good Samaritan, assisting Warren and firing shots at D.T. and T.B. Like Warren, Mr. Esters could have easily fled the scene.

{¶50} Mr. Esters' arguments that the outcome of trial would have been different if a defense of others claim had been asserted and had Warren testified are speculative and do not support a reversal of the conviction. Regardless of whether a defense of others claim was asserted, the State presented the restaurant surveillance videos that show Warren firing at D.T. and T.B. without provocation and, almost immediately thereafter, Esters also began firing without provocation. "[T]he State presented sufficient evidence, if believed, to disprove the 'at fault' element of self-defense, and the jury could have reasonably concluded beyond a reasonable doubt that Mr. Warren was the initial aggressor in the shooting incident." *Warren* at ¶ 14. In reviewing the same restaurant surveillance videos, this Court previously noted in *Warren* that "D.T. never reached for or drew his gun;" "Mr. Warren undeniably escalated the situation as the initial aggressor by shooting the victims without warning[;]" "Mr. Warren was agitated, looking for a fight, called for armed backup, and was intent on getting to his gun first[;]" "Mr. Warren could have easily fled the scene, but he chose to stay and shoot the victims instead." *Id.* at ¶ 24. The

surveillance videos show Mr. Esters assisting Warren and, like Warren, Mr. Esters could have easily fled the scene. To maintain that he had a viable defense of others claim is speculative at best.

**{¶51}** Further, Mr. Esters fails to explain how Warren's testimony would have negated what the jury saw on the surveillance videos. Even if Warren testified that Mr. Esters was a good Samaritan, the jury would have observed Mr. Esters on the surveillance videos helping or aiding Warren fire shots at D.T. and T.B.

**{¶52}** Mr. Esters failed to demonstrate that trial counsel's actions were deficient and/or that he was prejudiced by trial counsel's performance. *Strickland*, 466 U.S. at 687. There is little trial counsel could have done, considering the surveillance video evidence, to achieve a different result at trial. Counsel's trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Clayton*, 62 Ohio St.2d 45, 49 (1980).

**{¶53}** Accordingly, Mr. Esters' fourth assignment of error is overruled.

III.

**{¶54}** For the reasons stated above, Mr. Esters' first, second, third, and fourth assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

CARR, P. J.
CONCURS.

FLAGG LANZINGER, J.
CONCURS IN JUDGMENT ONLY.

APPEARANCES:

WESLEY C. BUCHANAN, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.