[Cite as *State v. Beauford*, 2023-Ohio-3782.]

STATE OF OHIO            )          IN THE COURT OF APPEALS
                         )ss:       NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT         )

STATE OF OHIO                       C.A. No.     30545

    Appellee

    v.                              APPEAL FROM JUDGMENT
                                    ENTERED IN THE
TERRELL BEAUFORD                    COURT OF COMMON PLEAS
                                    COUNTY OF SUMMIT, OHIO
    Appellant                       CASE No.     CR 18 09 3060

DECISION AND JOURNAL ENTRY

Dated: October 18, 2023

CARR, Judge.

{¶1}    Defendant-Appellant Terrell Beauford appeals the judgment of the Summit County Court of Common Pleas.  This Court affirms.

I.

{¶2}    Following an investigation into suspected drug activity, a search warrant was obtained for 630 Crosby Street, apartment 1, in Akron.  Police believed it to be a two-unit dwelling; however, the search revealed that the first floor contained two apartments in addition to the known upstairs apartment.  Based upon evidence recovered in the search, an indictment was filed in October 2018, charging Beauford with multiple drug offenses, having weapons while under disability, and endangering children.  Forfeiture specifications accompanied some of the charges.  A supplemental indictment was filed in December 2018, adding several additional drug offenses, forfeiture specifications, and firearm specifications.

{¶3} Beauford filed several pretrial motions including a motion to suppress arguing that the search warrant lacked particularity and that the affidavit in support of the warrant lacked an adequate factual basis to support a finding of probable cause. Beauford also filed a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 172 (1978), challenging the affidavit offered in support of the search warrant. In support of his motion for a hearing, Beauford submitted several exhibits. The State opposed the motion. A suppression hearing was held, and post-hearing briefs were submitted by the parties. The trial court denied the motions. Beauford filed a motion for reconsideration, which was also denied.

{¶4} In April 2022, upon motion of the State, several charges and specifications were dismissed. Additional counts were dismissed prior to the commencement of trial and Beauford waived his right to a jury trial as to the forfeiture specifications. The remainder of the matter proceeded to a jury trial. The jury was unable to reach a unanimous verdict as to three counts, including the count of having weapons while under disability, and a special finding associated with an additional count. Mistrials were declared as to those counts and the special finding. The jury found Beauford guilty of possession of cocaine, aggravated possession of drugs, aggravated trafficking in drugs, possession of drugs, and endangering children. The jury found Beauford not guilty of the illegal manufacture of drugs. The trial court found the funds subject to forfeiture. The trial court sentenced Beauford to a total term of 10 years in prison.

{¶5} Beauford appealed, but the appeal was dismissed for lack of a final appealable order. *State v. Beauford*, 9th Dist. Summit No. 30355 (Nov. 9, 2022). The trial court then issued another entry and Beauford again appealed. Beauford has raised three assignments of error for our review, some of which will be addressed out of sequence to facilitate our analysis.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING MR. BEAUFORD'S MOTION TO SUPPRESS THE EVIDENCE SEIZED PURSUANT TO SEARCH WARRANTS THAT WERE ISSUED AND EXECUTED IN VIOLATION OF HIS RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATE CONSTITUTION.

{¶6} Beauford argues in his first assignment of error that the warrant affidavit contained false statements that were either intentionally made or were made with reckless disregard for the truth and those false statements were necessary to the finding of probable cause. Beauford also appears to assert that the warrant lacked particularity and that the right apartment should not have been searched as it was apartment 2 and only apartment 1 was mentioned in the warrant.

{¶7} The search warrant at issue authorized the search of 630 Crosby Street, Apartment #1 which was further described as

being a green sided with white trim, two story, multiple unit dwelling which faces north towards Crosby Street. The numeral "630" are black and are located on the north side front porch support column on the east side of the porch which is white in color. The residence is located on the south side of Crosby Street. The driveway is located on the east side of the premises and leads to a small parking area in the rear of the residence. There are no visible apartment number markers on the doors being utilized during the investigation however the two doors are: FRONT, north side door off of the front porch with a black metal security door; and REAR, south side door with a black metal security door. The curtilage and persons described within said affidavit are also to be searched.

{¶8} The property to be searched for included Ecstasy, firearms, currency, records, documents, and measuring and processing equipment related to drug trafficking.

{¶9} The affidavit of Sergeant, then Detective, Todd Sinsley, which is dated September 6, 2018, describes the premises as provided in the warrant. The affidavit details a controlled buy of Ecstasy made by an information source at the premises within 16 days prior. The affidavit also indicates that the affiant discussed the alleged drug activity at the premises with the source within

three days prior and that the source indicated that the occupants of the residence, Tyrone Beauford ("Tyrone") and Beauford, were both in possession of Ecstasy and were in the process of selling from that location. The affidavit states that the source has provided the affiant with information concerning the possession and sale of controlled substances in Akron and the information has been corroborated by the affiant. The affidavit also lists the arrest records of both Tyrone and Beauford and indicates that Beauford is listed on the public utilities for 630 Crosby, apartment 1. In the affidavit, the affiant describes a short-term visit to the location on August 21, 2018. The vehicle involved was described as having Ohio plates. The vehicle was stopped, and the driver discovered to be Tristan Beauford ("Tristan"), the brother of Tyrone and Beauford. Tristan was found with cash, marijuana, Fentanyl, and cocaine. The affidavit also notes a large amount of short-term traffic over the prior three weeks involving the front door and rear south side door of the location which was consistent with drug trafficking.

{¶10} The search was conducted September 6, 2018. The property had three mailboxes but only two were labeled. Upon entering the front door of the residence there was a foyer with a stairway and two doors, one on either side of the foyer. Neither of the doors had identifying information on the outside and both were open; ultimately it came to light that each was a separate apartment. Beauford was seen running from the apartment on the left into the apartment on the right and towards the back door, which was connected to the apartment on the right. Drugs were located in the apartment on the right and Beauford was found with a key to the apartment on the right on his person. Beauford's girlfriend and his child were located in the apartment on the left. Beauford's girlfriend stated that Beauford did not stay in that apartment with her.

{¶11} The review of a motion to suppress is a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372. "The very nature of the questions presented

requires a case-by-case fact-driven analysis." *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, ¶ 32.

{¶12} "The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.' The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison*, 480 U.S. 79, 84 (1987); *see also* Ohio Constitution, Article 1, Section 14. "For a search warrant to issue, the evidence must be sufficient for the magistrate to conclude that there is a fair probability that evidence of a crime will be found in a particular place. The reviewing court then must ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Castagnola* at ¶ 35. "Probable cause to search does not require proof that a crime was actually committed, merely the fair probability that evidence of a crime will be found at the location described." *State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 41.

{¶13} "There is * * * a presumption of validity with respect to the affidavit supporting [a] search warrant." *Franks*, 438 U.S. at 171. In a challenge to the veracity of the facts set forth in the warrant affidavit,

> [t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are

insufficient. * * * [I]f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Id*. at 171-172.

{¶14} Thus, "[t]o successfully attack the veracity of a facially sufficient search warrant affidavit, a defendant must show by a preponderance of the evidence that the affiant made a false statement, either intentionally, or with reckless disregard for the truth." (Internal quotations and citations omitted.) *McKnight* at ¶ 31. "[R]eckless disregard means that the affiant had serious doubts of an allegation's truth. Omissions count as false statements if designed to mislead, or * * * made in reckless disregard of whether they would mislead, the magistrate." (Internal quotations and citations omitted.) *State v. Dibble*, 133 Ohio St.3d 451, 2012-Ohio-4630, ¶ 18.

{¶15} In his motion for a *Franks* hearing, Beauford asserted that the affidavit for the search of apartment 1 was problematic because the residence at issue contained three apartments as opposed to two. Instead of the first floor being a single apartment, it contained two separate apartments. Beauford maintained that the apartment that contained the contraband was apartment 2 and that that apartment was not identified in the warrant. In addition, Beauford asserted that Tristan, who is mentioned in the affidavit, drove a vehicle registered in North Carolina, not Ohio and that Tyrone, also mentioned in the affidavit, lived in Georgia, not Ohio.

{¶16} In support of his claims, Beauford submitted several documents, including, inter alia, a document from the fiscal office indicating the residence was a three-family dwelling, Beauford's lease for apartment 1, evidence of an October 2018 complaint to evict Tristan from apartment 2, a document from a 2013 court case evidencing that Tyrone had a mailing address in Georgia, utility bills from after the search was conducted that are addressed to someone other than

Beauford, and an incident report from August 21, 2018, demonstrating that Tristan was arrested and drove a vehicle registered in North Carolina. Notably absent, without explanation, was any affidavit, witness statement, or other sworn testimony to support Beauford's claims. *See Franks* at 171. While Beauford pointed to other alleged "inconsistencies and misstatements" in the affidavit, he never specifically asserted that the affiant made a false statement, either intentionally, or with reckless disregard for the truth. *See McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, at ¶ 31; *Franks* at 171. Beauford also did not include a copy of the warrant and affidavit with the motion. The State opposed Beauford's motion and in so doing attached a copy of the search warrant and affidavit. Given the foregoing omissions from the motion, we question whether any *Franks* hearing was warranted. Nonetheless, the trial court held a hearing on Beauford's motions, including his more general motion to suppress. In so doing, the trial court indicated that the matter was proceeding on the suppression hearing and if information came to light during the hearing the trial court would reconsider with respect to whether a specific *Franks* hearing was warranted.

{¶17} At the hearing, Sergeant Todd Sinsley testified first. At the time the warrant was issued, Sergeant Sinsley was a detective in the Street Narcotics Uniform Detail with the Akron Police Department. Sergeant Sinsley prepared the affidavit that accompanied the warrant and presented it to the judge.

{¶18} Sergeant Sinsley described the investigation that was undertaken to determine the layout of the house. He indicated that it was discovered that the residence had two utility meters and he also knew it was a multiple unit dwelling. The source indicated that the house had an upstairs and downstairs apartment. Sergeant Sinsley also looked at the county website, which states that it is a three-family dwelling, but explained that the county website was not usually accurate as to how many units are in Akron area multi-family houses. Because of that, Sergeant

Sinsley explained that the police tend to determine the number of units from other factors such as utility meters and the doors that are used by the suspects. Sergeant Sinsley looked up the utility records on a computer database and confirmed that Beauford had utilities at that location beginning in 2014 through 2018. Sergeant Sinsley also discovered that the calls to police associated with the house tended to support that there was an upstairs and a downstairs apartment. And while there were three mailboxes at the residence, only two were labeled. One mailbox was labeled Beauford and another was labeled with a name unrelated to the investigation.

{¶19} Sergeant Sisley explained that, prior to the execution of the warrant, police believed that the first floor was one apartment that was being operated by Beauford and there was another uninvolved apartment upstairs. Sergeant Sinsley agreed that the source was wrong about the layout of the house. Sergeant Sinsley indicated that he was not sure on the numbering of the apartments and that is why he identified the premises to be searched by the doors that he had seen used during the course of the surveillance. Sergeant Sinsley pointed out that the right-side apartment containing the drugs was connected to both the front door and rear door and both those doors were specified on the warrant and affidavit. Thus, the left apartment was the one that was unexpected at the time of the search. Once police were inside the house during the search, it appeared that the entire first floor was operating as one apartment with Beauford's girlfriend and child living in the left apartment and the drug business being conducted out of the right apartment.

{¶20} Sergeant Sinsley testified about the controlled buy involving the source. He indicated that the source met with Beauford on the front porch of the house and Sergeant Sinsley observed Beauford go into the house. Sergeant Sinsley testified that Beauford was the black male that was mentioned in the search warrant affidavit and that Sergeant Sinsley should have provided that clarification in the affidavit. As to the short-term visit that ultimately resulted in Tristan's

arrest, Sergeant Sinsley asserted that the individuals involved were using both the front and rear doors. Sergeant Sinsley also confirmed that the affidavit contained a typo as to the plate of the vehicle that Tristan was driving – it should have reflected that it was a North Carolina plate as opposed to Ohio.

{¶21} As to Tyrone, police knew that Tyrone had a residence in Georgia but also were aware that Tyrone was making trips from Georgia to Akron and was staying at 630 Crosby when he was in Ohio. Police suspected that Tyrone was also involved in the drug activity at the residence.

{¶22} Following Sergeant Sinsley's testimony, the trial court stated that it found that "while [the court] agree[s] that the initial arguments that [defense counsel] made may have shown a preliminary showing that maybe something was false or inappropriate in the search warrant, [the trial court finds] based on the testimony presented here today that there's nothing intentional, knowingly or reckless with regards to what was contained in the search warrant." The trial court then denied the request for a *Franks* hearing. The trial court informed the parties that any other witnesses that were called were for purposes of the general motion to suppress.

{¶23} Defense counsel then proceeded to call Beauford and the upstairs apartment tenant as witnesses. Beauford testified that he rented the apartment to the left. A rental agreement dated in 2014 indicates that Beauford rented 630 Crosby St. A-1. Beauford averred that Tristan lived in the apartment to the right and eviction actions were filed against him in October 2016 and October 2018. Beauford testified that the landlord paid all of the utilities for the first floor of the building and indicated that the utilities were in the landlord's name. Bills submitted in support of Beauford's claim were dated subsequent to the search.

**{¶24}** The upstairs tenant also testified to living in the upstairs apartment for the last 19 or 20 years. The upstairs tenant explained that the landlord paid the downstairs utilities, but the upstairs tenant paid his own utilities. The upstairs tenant averred that Beauford lived in the apartment to the left and Tristan lived in the apartment to the right. The upstairs tenant indicated that police did come up to his apartment and searched it.

**{¶25}** Following the hearing, the parties submitted briefs. The trial court then issued an entry denying Beuford's motion for a *Franks* hearing concluding that "[w]hile the Affidavit may have contained some inaccuracies, which only became evident in hindsight, the Court finds that the Defendant did not produce evidence that constitutes a 'substantial preliminary showing' that the Affidavit offered in support of the search warrant contained false or misleading statements, or statements made with reckless disregard for the truth." The trial court additionally concluded that the warrant described the premises to be searched with sufficient particularity even though the apartment was mislabeled as apartment 1. The trial court noted that the warrant and affidavit described premises to be searched as the area between the front door and rear door and the only apartment with access to both the front and rear doors was the apartment on the right where the drugs were found.

**{¶26}** On appeal, while Beauford asserts there were numerous discrepancies between the affidavit and the testimony, Beauford has not demonstrated that the affiant made a false statement, either intentionally, or with reckless disregard for the truth. *See McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, at ¶ 31; *Franks,* 438 U.S. at 171. Sergeant Sinsley explained in detail his process and the circumstances surrounding the drafting of the affidavit and how he came to draft it as he did. At best, the testimony evidences innocent mistakes made by the police in the course of the investigation. *See Franks* at 171-172.

{¶27} Further, Beauford has not shown that the warrant lacked particularity or that the police should not have searched the right apartment pursuant to the warrant. As recited above, the search warrant at issue authorized the search of 630 Crosby Street, Apartment #1 which was further described as

> being a green sided with white trim, two story, multiple unit dwelling which faces north towards Crosby Street. The numeral "630" are black and are located on the north side front porch support column on the east side of the porch which is white in color. The residence is located on the south side of Crosby Street. The driveway is located on the east side of the premises and leads to a small parking area in the rear of the residence. There are no visible apartment number markers on the doors being utilized during the investigation however the two doors are: FRONT, north side door off of the front porch with a black metal security door; and REAR, south side door with a black metal security door. The curtilage and persons described within said affidavit are also to be searched.

{¶28} "In determining whether a warrant is specific enough, the key inquiry is whether the warrant could reasonably have described the items more precisely. A broad and generic description is valid if it is as specific as circumstances and nature of the activity under investigation permit * * *." (Internal quotations and citations omitted.) *State v. Amodio*, 9th Dist. Medina No. 11CA0048-M, 2012-Ohio-2682, ¶ 7.

{¶29} Here, police observed the suspects using both the front and rear doors, but those doors did not list any apartment numbers. Based on the information they possessed, police believed that the entire first floor was one apartment. Beauford does not explain how the warrant could have been more specific in light of what the police believed to be true. Beauford tries to argue that the warrant lacked particularity because the affiant relied on information that he knew was false in drafting the description of the premises. However, as discussed above, Beauford did not demonstrate that the affiant made a false statement, either intentionally, or with reckless disregard for the truth.

{¶30} Here, the first floor contained a right and left apartment. The search disclosed the drugs at issue in the right apartment. That apartment had access to both the front door and rear door. Thus, the apartment containing the drugs was described in the warrant even if it was not technically apartment 1. Beauford thus has not shown that police should not have searched that apartment based upon the language in the warrant.

{¶31} Beauford has not demonstrated that the trial court erred in denying his motion. Beauford's first assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE TRIAL COURT ERRED AS A MATTER OF LAW BECAUSE THE STATE FAILED TO ESTABLISH ON THE RECORD SUFFICIENT EVIDENCE TO SUPPORT THE CHARGE LEVIED AGAINST MR. BEAUFORD IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 &16 OF THE OHIO CONSTITUTION.

{¶32} Beauford argues in his third assignment of error that the guilty verdicts are based on insufficient evidence. Essentially Beauford asserts that the evidence supports that the drugs at issue belonged to Tristan not Beauford. We will limit our discussion accordingly.

{¶33} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

**{¶34}** As mentioned above, Beauford was found guilty of possession of cocaine, aggravated possession of drugs (methamphetamine), trafficking in drugs (methamphetamine), possession of drugs (propoxyphene), and endangering children.

**{¶35}** At trial, Sergeant Sinsley again testified. He indicated that he was the lead detective in a narcotics investigation involving 630 Crosby Street in August and September of 2018. Officers had been surveying the house for a little over three weeks. The house was believed to be a duplex with one apartment on the first floor and another on the second floor. This conclusion was based upon prior calls to the house, public records, and how the building looked from the outside. Additionally, the utilities for the downstairs were in Beauford's name. It was discovered during the search on September 6, 2018, that the house was actually three apartments, with two being on the first floor.

**{¶36}** Prior to the search, police observed short-term traffic into the driveway side of the residence to the back door and front door. Both Beauford and his brothers were seen using both the front and back door and other people were seen meeting at both the front and back door. Routinely, both Beauford and Tristan were seen at 630 Crosby Street. Police believed they saw Beauford and his brother engage in hand-to-hand transactions in the driveway. Tristan was not found at the house at the time of the search and had been arrested prior to the search for drug-related offenses. His address was listed as 630 Crosby Street in paperwork related to the charges. When the upstairs tenant was observed, he was seen using a stairway on the outside of the building.

**{¶37}** On the day of the search, police observed a vehicle pull up to the residence. Beauford and another individual exited the vehicle and entered the house via the front door. Afterwards, the search warrant was executed. Beauford's girlfriend and child were in the house at the time. When entrance was made, Beauford was seen running into the apartment on the right

side[1] and towards the back door, where he was then arrested. Drugs, including cocaine, methamphetamine, and propoxyphene, were recovered from that right side apartment. In addition, mail addressed to Tristan and mail addressed to Beauford was found in that apartment. $1500.00 in cash was also found there. Miscellaneous packaging materials, including plastic baggies and wrappers, were found there as well. Police also discovered multiple digital scales, a blender with drug residue, empty bottles which were believed to be used to dilute or cut the drugs, spoons, and gloves. Sergeant Sinsley asserted that the presence of the gloves, spoons, and baggies indicated that it was more than just a location selling drugs, it was also a location where drugs were manufactured.

{¶38} Police recovered a key to the apartment containing the drugs on Beauford's person. Beauford was the only person at the residence at that time who had a key to that apartment. In addition, Beauford had $282.00 on his person.

{¶39} Methamphetamine and a smart phone were recovered from the vehicle Beauford had been driving. Sergeant Sinsley also discussed the phone extraction report from the phone obtained from the vehicle and some of the text messages, which in Sergeant Sinsley's training and experience, were indicative of drug trafficking. The report indicated that an email account which included Beauford's name was associated with the phone.

{¶40} Based on the totality of the evidence, Sergeant Sinsley believed that Beauford and Tristan were involved in both drug manufacturing and drug trafficking.

{¶41} In light of Beauford's arguments in this Court, Beauford has not demonstrated that his convictions were based on insufficient evidence. There was substantial circumstantial evidence

---

[1] The trial transcript largely refers to this apartment as the west side apartment and the other one as the east side apartment; however, for purposes of clarity and consistency, we will refer to them as the right and left apartments.

that connected Beauford to the apartment where the drugs and drug-related supplies were found and also evidence that Beauford was engaged in drug trafficking. During the search, Beauford was seen running through that apartment and towards the back door when he was stopped by police. Beauford was the only person in the house with a key to that apartment and mail addressed to him was found in that apartment. The cell phone found in the car Beauford was driving contained texts that Sergeant Sinsley explained could be viewed as being associated with drug trafficking. That phone included an email account that contained Beauford's name. In addition, police believed they had observed Beauford engaged in hand-to-hand transactions in the driveway prior to the search.

{¶42} R.C. 2925.01(K) states that "'[p]ossess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." "This Court has repeatedly held that a person may knowingly possess a substance or object through either actual or constructive possession. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession. Additionally, [p]ossession of a drug includes possessing individually, or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others." (Internal quotations and citations omitted.) *State v. Higgins*, 9th Dist. Summit No. 27700, 2018-Ohio-476, ¶ 17.

{¶43} Thus, the fact that Tristan may also have been connected to that apartment and the drugs does not mean, in and of itself, that Beauford could not have possessed the drugs at issue. Beauford has not demonstrated that his convictions were supported by insufficient evidence.

{¶44} Beauford's third assignment of error is overruled.

## ASSIGNMENT OF ERROR II

MR. BEAUFORD'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND ARTICLE I, SECTIONS 1, 10 & 16 OF THE OHIO CONSTITUTION.

{¶45} Beauford argues in his second assignment of error that the guilty verdicts are against the manifest weight of the evidence. Beauford reiterates his assertion that the evidence did not support that he was responsible for the crimes at issue.

{¶46} To the extent that Beauford challenges the charge for having weapons while under disability, we note that the jury was unable to reach a verdict on that charge and it was subsequently dismissed.

> In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id*.

{¶47} Beauford's argument is essentially a reiteration of his argument that his convictions were based on insufficient evidence. This Court has reviewed the entire record and cannot say that Beauford has demonstrated that the jury lost its way in finding him guilty of the offenses at issue. *See id.* As discussed above, there was substantial circumstantial evidence implicating Beauford in these crimes.

{¶48} Beauford's second assignment of error is overruled.

III.

**{¶49}** Beauford's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

HENSAL, P. J.
FLAGG LANZINGER, J.
CONCUR.

APPEARANCES:

PAUL M. GRANT, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.