**[Cite as *State v. McConnell*, 2025-Ohio-4358.]**

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

v.

DAVID MCCONNELL

    Appellant

C.A. No.    31240

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR-2023-10-3288

DECISION AND JOURNAL ENTRY

Dated: September 17, 2025

CARR, Judge.

{¶1} Defendant-Appellant David Allen McConnell appeals the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Following a September 26, 2023 traffic stop, McConnell was indicted on one count of trafficking in cocaine with a major drug offender specification, one count of possession of cocaine with a major drug offender specification, one count of possession of a fentanyl-related compound, one count of aggravated possession of drugs, and one count of improperly handling firearms in a motor vehicle. A forfeiture specification accompanied the latter charge.

{¶3} The matter proceeded to a jury trial. The trial court granted McConnell's Crim.R. 29 motion with respect to the charge of improperly handling firearms in a motor vehicle. The jury found McConnell not guilty of trafficking in cocaine, but guilty of the remaining offenses. McConnell was subsequently sentenced.

{¶4} McConnell has appealed, raising two assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE EVIDENCE PRESENTED AT TRIAL BY THE STATE OF OHIO WAS INSUFFICIENT TO SUPPORT APPELLANT'S CONVICTIONS[.]

{¶5} McConnell asserts in his first assignment of error that the evidence was insufficient to support the jury's guilty verdicts. Specifically, it appears that McConnell maintains that there was insufficient evidence that he possessed the drugs at issue.

{¶6} When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction. *State v. Jenks*, 61 Ohio St.3d 259, 279 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶7} McConnell was found guilty of violating R.C. 2925.11(A), (C)(4)(f), which prohibits knowingly using, possessing, or obtaining a specified amount of cocaine. McConnell was also found guilty of the accompanying major drug offender specification. R.C. 2941.1410(A). In addition, McConnell was found guilty of violating R.C. 2925.11(A), (C)(11)(c), which prohibits knowingly using, obtaining, or possessing a specified amount of a fentanyl-related compound. Lastly, the jury found McConnell violated R.C. 2925.11(A), (C)(1)(b), which prohibits knowingly using, obtaining, or possessing a specified amount of certain schedule I or II substances, in this case, methamphetamine. *See* Adm.Code 4729:9-1-02(C)(2).

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶8} "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "This Court has repeatedly held that a person may knowingly possess a substance or object through either actual or constructive possession. Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession. Additionally, [p]ossession of a drug includes possessing individually, or jointly with another person. Joint possession exists when two or more persons together have the ability to control an object, exclusive of others." (Internal quotations and citation omitted.) *State v. Beauford*, 2023-Ohio-3782, ¶ 42 (9th Dist.). Moreover, the jury was instructed as to accomplice liability in terms of aiding and abetting. R.C. 2923.03(A)(2) provides that "[n]o person, acting with the kind of culpability required for the commission of an offense, shall . . . [a]id or abet another in committing the offense[.]" "[T]o aid or abet is [t]o assist or facilitate the commission of a crime, or to promote its accomplishment." (Internal quotations and citation omitted.) *State v. Esters*, 2023-Ohio-3699, ¶ 22 (9th Dist.). Whoever is found to be complicit is prosecuted and punished as if that individual was the principal offender. R.C. 2923.03(F).

{¶9} At trial, evidence was put forth which supports the following narrative. The Ohio Northeast Smuggling Enforcement Team ("ONSET") is a multi-jurisdictional unit focused on drug

smuggling and money laundering. Some of the officers assigned to ONSET would check hotels in Summit and Medina Counties looking for behavior consistent with smuggling. This would include individuals visiting from near the southern Ohio border who were not staying long, brought little to no luggage, and paid in cash. These individuals would not engage in drug deals at the hotel but would do so elsewhere in the community and then leave town.

{¶10} Deputy Bron Thomas with the Summit County Sheriff's Office was a part of ONSET in September 2023. Deputy Thomas discovered that two individuals were staying in a room at the Quality Inn in Springfield Township. They checked in around 1:30 a.m. on September 26, 2023. Deputy Thomas learned that the two people were McConnell and his girlfriend. Their car was a Chevy Cobalt with West Virginia plates that were registered to someone else. Deputy Thomas indicated that a lot of drugs are trafficked between the Akron area and West Virginia.

{¶11} The officers then proceeded to sit and wait for McConnell and his girlfriend to check out. Around noon, McConnell and his girlfriend proceeded to the Chevy Cobalt. McConnell was carrying a blue backpack, and his girlfriend had a purse.

{¶12} The officers followed the car to a house in Kenmore. McConnell's girlfriend went into the house. McConnell parked the car on the street and then went into the house as well. McConnell then drove the car to a drive-through beverage store and parked in a shopping plaza for around 20 minutes. The car then went back to the house again. A man who was later identified as Malik R. came out of the house and went back and forth between the house and car a few times. Around 2:30 p.m., Malik R. got into the back seat on the driver's side. The car drove away with McConnell driving and his girlfriend in the front passenger seat. Ultimately, the car got on Interstate 77 South.

{¶13} ONSET informed the Ohio State Highway Patrol so that it could initiate a traffic stop. If something is found during the traffic stop, then ONSET would also participate in the traffic stop.

{¶14} Trooper Matthew Poremba with the Ohio State Highway Patrol initiated a traffic stop on McConnell's vehicle after he observed the vehicle following too closely. Trooper Poremba approached the vehicle from the passenger side and noted that the windows were darkly tinted. When the windows were opened, Trooper Poremba noticed a strong odor of burnt marijuana coming from the vehicle. McConnell was not able to show proof of registration because he had recently purchased the vehicle. McConnell had a bill of sale written on a piece of notebook paper. The bill of sale was not notarized and did not list a price for the vehicle. McConnell appeared very nervous and was not able to provide satisfactory information about the ownership of the vehicle. Trooper Poremba told McConnell to keep his hands on the steering wheel, but McConnell reached down to touch his leg. Trooper Poremba then had McConnell step out of the car. McConnell did not want to do so and was argumentative but did ultimately get out. As he was getting out, a glass pipe fell onto the driver's seat. When Trooper Poremba tried to pat McConnell down, McConnell kept removing his hands from the vehicle. Trooper Poremba found a lighter, cigarettes, and a burnt piece of chore boy that evidenced potential illegal drug use. At that point, Trooper Poremba placed McConnell in handcuffs and read him his rights. Trooper Poremba continued with the search of McConnell's person and found a small glass container containing a small amount of what Trooper Poremba believed to be methamphetamine and a glass pipe. The material was not tested and is not part of the charges at issue. McConnell was then placed in a police vehicle. McConnell admitted to using methamphetamine but denied that there were any weapons in the vehicle. McConnell informed Trooper Poremba that McConnell and his girlfriend gave Malik R. a ride to

Akron to see family and they were in the process of taking him back to New Philadelphia. McConnell told police that he was getting gas money and getting paid for taking Malik R.

{¶15} Trooper Poremba then had Malik R. exit the vehicle. Malik R. was resistant to exiting the vehicle. When he did, it was noted that he smelled of burnt marijuana. Malik R. was also placed in handcuffs. It was determined that Malik R. lived in Ohio. A large sum of cash and rubber bands were found on his person. Malik R. claimed the money was to pay for the ride. McConnell's girlfriend was also removed from the vehicle and searched. Then a search of the vehicle was conducted.

{¶16} A loaded firearm was found in the blue backpack. McConnell indicated that he found the gun in the car after purchasing it. He put it in the backpack and brought it into the hotel so that no one would break into the car and steal the weapon. Also in the backpack was a folded Ohio lottery ticket with a brownish substance on it which was later determined to be fentanyl, a plastic bag containing approximately 6 grams of what was later determined to be methamphetamine, and another bag with several different kinds of pills along with a small amount of what was determined to be methamphetamine. Panels in the car were discovered to be loose, which could indicate that drugs were being stored inside. Additionally, the center console was loose, and several fasteners were missing. Inside the void under the cupholders in the center console, bags of drugs were found. One of the bags contained almost 115 grams of cocaine and the other bag contained approximately 8 grams of fentanyl. Trooper Poremba asserted that a single hit of cocaine could be between .2 to .4 grams and thus 115 grams was a large quantity which was consistent with trafficking. No evidence was tested for DNA or fingerprints. Multiple cell phones were found in the vehicle during the search, but they were not analyzed.

{¶17} As the investigation continued, Malik R. became more and more volatile. When Malik R. learned that his parole officer would be involved, he got very angry. Malik R. began yelling and swearing and repeatedly told McConnell not to say anything. Malik R. also told McConnell that Malik R. would get McConnell a lawyer. In light of Malik R.'s behavior, Trooper Poremba believed that the three people in the vehicle had a vested interest in each other.

{¶18} Videos of the stop and searches were played for the jury and admitted into evidence.

{¶19} McConnell also testified at trial. McConnell admitted to being a drug addict. He said he began using marijuana in middle school but did not start using methamphetamine until 2020, after his wife died. McConnell indicated that he was not employed and instead did odd jobs. His money largely went towards supporting his drug habit. McConnell purchased the Chevy Cobalt a few days before the traffic stop using funds from some work he performed on a car along with some money from his girlfriend's mother. McConnell testified that he removed the panels after he bought the car in order to tint the windows.

{¶20} McConnell and his girlfriend lived in West Virginia. McConnell met Malik R. in early September 2023 through a friend of a friend. Malik R. resided in Bridgeport, Ohio, which was about a half hour drive from McConnell. In exchange for gas money and $100, McConnell agreed to drive Malik R. from Bridgeport to Akron.

{¶21} To McConnell's knowledge, Malik R. did not have drugs on him when they picked him up. McConnell maintained that he only had what was in the pipe and the small container found in his pocket. When they made it to Akron, Malik R. told McConnell and his girlfriend that they could not stay with him, so McConnell and his girlfriend went to the Quality Inn. McConnell was uncertain where the gun came from. Malik R. pointed it out to McConnell, so it could have come from the car's previous owner or Malik R. McConnell took the gun into the hotel because

he did not want someone breaking into the car to get it. McConnell acknowledged that the blue backpack was his.

{¶22} In the morning, Malik R. gave McConnell an address to meet him at. McConnell went there and Malik R. asked McConnell and his girlfriend to wait. McConnell denied going into the house. McConnell and his girlfriend waited around in the car for about an hour. McConnell told Malik R. that he wanted to get paid and get going. Malik R. gave McConnell some money and told him to go get a snack and come back. McConnell and his girlfriend went to the store and then waited in a shopping plaza for a little while before returning to the house. When they returned, Malik R. got his bags and got in the back seat. He was seated towards the middle of the back seat. The three then left.

{¶23} When McConnell's vehicle was in the process of being pulled over, Malik R. began to get very upset and kept saying that he was not going back to prison. Malik R. was rifling through bags and then tried to stick something under McConnell's seat. McConnell told him not to put anything there as he did not want to go to jail. Malik R. told McConnell that they were going to go to jail if Malik R. could not hide what he had. McConnell noticed Malik R. had a bag of drugs. McConnell removed the cupholder from the console and threw the bag in the void in the console. Although later in his testimony, McConnell stated that he just lifted up the cupholder and Malik R. put the drugs into the void in the console. McConnell characterized lifting up the cupholder to find a place for the drugs as a mistake in retrospect. Prior to that moment, McConnell claimed to not know that Malik R. had drugs on him. McConnell also asserted that he did not put any drugs in his backpack. McConnell denied purchasing lottery tickets, although he admitted to somewhat regularly driving through parts of Ohio. McConnell maintained that the backpack was "sitting right underneath [Malik R.'s] arm before [they] got pulled over."

{¶24} McConnell admitted to being scared when he got pulled over but asserted that it was because he just became aware that there was a substantial amount of drugs in the car and he also had a small amount on his person. McConnell testified that if he had known that Malik R. had been trafficking in drugs, he would not have given him a ride. McConnell reiterated that he did not know Malik R. had drugs when he got into McConnell's car. McConnell testified that only the drugs on his person, for which he was not charged, were his.

{¶25} Viewing the evidence in a light most favorable to the prosecution, and in light of McConnell's arguments on appeal, we conclude that McConnell has not demonstrated that the State failed to present sufficient evidence that McConnell possessed the drugs at issue. The cocaine and the majority of the fentanyl were found in the void in the center console of McConnell's vehicle. There is nothing in the record to suggest that anyone other than McConnell would know about this hiding spot. McConnell himself first admitted to placing the drugs there and later indicated that he removed the cupholders and allowed Malik R. to place them there. That area was located between where the driver and front-seat passenger would be seated, and the record is clear that McConnell was driving the vehicle. While McConnell denied knowing anything about the drugs until his car was in the process of being stopped, McConnell nonetheless helped secret the drugs. Further, during the investigation, Malik R. repeatedly urged McConnell not to say anything and told him that Malik R. would get them an attorney. Trooper Poremba believed that this behavior evidenced that the three individuals were working together.

{¶26} With respect to the remaining drugs, those were found in McConnell's own backpack. McConnell admitted that it was his backpack but denied that he put the drugs in it. Methamphetamine was one of the drugs found in the backpack. McConnell testified that he was

a methamphetamine addict and even admitted to possessing a small amount of methamphetamine in his pocket, an amount that he was not charged with possessing.

{¶27} Overall, McConnell has not demonstrated that there was insufficient evidence that he possessed the drugs alone or jointly and/or that he aided and abetted Malik R. in possessing the drugs. *See Beauford*, 2023-Ohio-3782, at ¶ 42 (9th Dist.); R.C. 2923.03(A)(2), (F). McConnell's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE CONVICTIONS OF [APPELLANT] FOR POSSESSION OF COCAINE, WITH A MAJOR DRUG OFFENDER SPECIFICATION, POSSESSION OF FENTANYL RELATED COMPOUND AND AGGRAVATED POSSESSION OF DRUGS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND SHOULD THEREFORE BE OVERTURNED.

{¶28} McConnell argues in his second assignment of error that his convictions are against the manifest weight of the evidence.

In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist. 1986). An appellate court should exercise the power to reverse a judgment as against the manifest weight of the evidence only in exceptional cases. *Id.*

{¶29} After independently reviewing the entire record, we cannot say that McConnell has demonstrated that his convictions are against the weight of the evidence. "[W]e remain mindful that the jury was in the best position to make credibility determinations[.]" *State v. Carter*, 2024-Ohio-5295, ¶ 24 (9th Dist.). In addition, "the jury [wa]s free to believe all, part, or none of the testimony of each witness." (Internal quotations and citation omitted.) *Id.* at ¶ 22. It was not

unreasonable for the jury to disbelieve McConnell's version of events. McConnell was an admitted drug addict who was not completely honest with police when he was stopped. For example, he did not inform police about the gun in the car when asked about the presence of weapons. While there was evidence that also connected Malik R. to the drugs, as mentioned above, the jury was instructed as to complicity. In light of the evidence presented, the jury could have reasonably concluded that the three individuals in the car were acting in concert and that McConnell aided and abetted in the possession of the drugs at issue.

{¶30} And while McConnell also points to an alleged lack of evidence in support of his argument, i.e. the failure of the police to examine the drugs for fingerprint or DNA evidence and the failure to investigate the contents of the multiple cell phones found in the car, that does not detract from the evidence that was collected and presented. Moreover, because that fingerprint, DNA, and cell phone evidence was not analyzed, there is no way to know whether it would support or refute McConnell's contentions.

{¶31} Overall, McConnell has not demonstrated that the jury lost its way in finding him guilty. McConnell's second assignment of error is overruled.

III.

{¶32} McConnell's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT


FLAGG LANZINGER, P. J.
HENSAL, J.
CONCUR.


APPEARANCES:

BRIAN J. WILLIAMS, Attorney at Law, for Appellant.

ELLIOT KOLKOVICH, Prosecuting Attorney, and C. RICHLEY RALEY, JR., Assistant Prosecuting Attorney, for Appellee.